THE WINONA AND ST. PETER RAILROAD COMPANY vs. JACOB S. DENMAN et al.

Under the charter of the Winona and St. Peter Railroad Company, in determining the compensation to be paid for the appropriation of land for railroad purposes, neither the commissioners nor the District Court are confined in their inquiries to the damage done to or the value of the strip of land actually taken for right of way.

It is proper for them to inquire into the effect of such taking upon the whole farm out of which the strip is taken ; and it makes no difference that the Court or Judge, as preliminary to the appointment of commissioners, have determined the title to the strip only.

In ascertaining such compensation, it is proper to enquire what is the value of the strip taken at the time when the question of compensation is passed upon by the commissioners.

The expense of building and maintaining additional fences rendered necessary by the construction of the road, is a proper element of damage.

Errors occurring on the trial prejudicial to the respondent, but not complained of by the appellant, will not in general be considered in the Supreme Court.

This is an appeal taken by the Winona and St. Peter Railroad Company from an order of the District Court of Winona County denying a motion for a new trial. A proceeding was commenced in said District Court by appellant, upon petition under its charter, for the right of way through the n. w. quarter of n. w. quarter and s. w. quarter of n. w. quarter, section 18, T. 107, R. 7 west, and n. e. quarter of n. e. quarter, of section 13, T. 107, R. 8 west, and lot 2 in section 13, T. 107, R. 8 west, and the s. w. quarter of the s. w. quarter of sec. 12, T. 107, R. 8 west, the property of Jacob S. Denman and wife, the respondents. The amount of land proposed to be taken was fifty feet on each side of a certain centre line described in said petition, and passing through said lands,

amounting to ten and thirty-six hundredths acres. An order was made by said Court determining the title to the lands proposed to be taken for such right of way to be in the respondents, and appointing three commissioners to ascertain and determine the compensation to be paid to respondents for the appropriation of such lands by appellant for right of way. The respective parties appeared before said commissioners on the 23d day of November, 1863, who filed their report, whereby they awarded to the respondents damages for such appropriation of said lands to the amount of $400. Notice of the filing of said report was duly served upon the respective parties, and thereafter, and within the time allowed by law, the said Railroad Company duly appealed from the award of said commissioners to the said District Court. The said appeal was brought on for trial at a general term of said Court, held on the 30th day of March, 1864. Jacob S. Denman, one of the respondents, was called as a witness in his own behalf, and testified that he resided on a farm traversed by appellant's railroad, and among other things was asked the following question, viz : "How much land have you in that farm?" which question was objected to by appellant's counsel on the grounds : "1st, that (under the Company's charter) it is immaterial and improper to enquire concerning other lands than those proposed to be taken, the damages to which the commissioners were appointed to appraise, for the purpose of laying a foundation for damages ; 2d, that the party is confined in his enquiries to the lands specified in the commission ; 3d, that in no case can respondents go outside of the sub-division through which the road passes, the title to which has been ascertained and determined by the Court." The objections were overruled by the Court, and the appellant's counsel duly excepted to such ruling, and the witness answered : "I have 320 acres by legal sub-division, one is fractional, making about 312 lying in a body." Like evidence was elicited from other witnesses and taken under the same exception. On being further examined the witness was asked by respondents' counsel the following question : "What was the market value of the land taken last fall?" which was objected to by appellant's counsel on the ground—"that the value

of the land taken is not the proper measure of damages, but that the proper measure is the difference in the market value of the lands affected by the taking, without the Railroad and with it, and that general benefits conferred upon those lands, and other lands of the respondents, should be set off against the damage if any to the land taken;" and second, "that the value should be shown at the time the Company took possession." The Court overruled the objection, and ruled "that the proper time for fixing the value, is the time the commissioners passed upon the question." The Court also ruled, "that the land taken must be paid for in money, and that no benefits, general or special, could be set off against it, and that so much of the Company's charter as allows benefits to be set off against the value of the land taken, is in conflict with the Federal Constitution." To which ruling appellant's counsel duly excepted, and the witness answered: "The land taken was worth $50 per acre on the 2d of November, 1863." Like evidence was elicited from other witnesses, and taken under the same objection. The Court also ruled "that as to damages beyond the value of the land actually taken, the jury might deduct therefrom any general benefits to respondents arising from the construction of this Railroad," to which ruling respondents excepted. The said witness was also asked the following question by respondents' counsel: "What additional amount of fences will be rendered necessary by the building of this road?" which question was objected to by appellant's counsel on the grounds: "1st, that it is immaterial and cannot be made the basis for the recovery of any damages whatever; 2d, that under the act of transfer of 1862, the company are not liable for fences." The objections were overruled and the appellant's counsel excepted, and the witness answered: "The distance is about seven-eighths of a mile," &c., &c. The said witness was also asked the following question by respondents' counsel: "What would it cost per rod to build an ordinary fence?" which question was objected to by appellant's counsel upon the same ground as the last. The objections were overruled by the Court and the appellant's counsel duly excepted, and the witness answered: "It would cost $1.50 per rod with sawed

posts," &c., &c.   The Railroad was constructed at the time the damages were assessed.   The jury returned the following verdict, viz:   "We, the jury, find a verdict for the respondent J. S. Denman, in the sum of seven hundred and fifty-eight and thirty-three hundredths dollars.   We further find that the land appropriated by the road-bed, ten and thirty-six hundredths acres, was of the value of two hundred and fifty-eight and thirty-three one hundredths dollars, and that he sustained damages beyond in the sum of five hundred dollars, making in the aggregate the amount aforesaid." A motion was thereupon made by appellants for a new trial, upon a case made and settled, which motion was denied, and an appeal is taken from the order denying the same to this Court.

SARGEANT, FRANKLIN & KEYES for Appellant.

I.—The Court erred in allowing the witness, Denman, to testify for the purpose of laying a foundation for the recovery of damages, that he owned a greater quantity of land than was described in the petition of the appellant; the title to which had not been previously ascertained and determined by the Court.

1. In this proceeding the jurisdiction of the District Court is simply appellate, and its proceeding is governed in all respects as upon appeal from Courts of Justices of the Peace.   *Laws of* 1855, *Chap*. 27, *Sec*. 5.

2. On an appeal from Courts of Justices of the Peace, no issues can be tried, except those tried in the Court below.   *Comp. Stat.*, *Chap*. 59, *Sec*. 127.

A party claiming damage to a piece of land described in the proceedings below, cannot, in the appellate Court, claim damages, in addition thereto, done to other pieces not so described, although the several pieces may be occupied as one farm.

3. The commissioners had no right or authority to award damages to the respondents, upon any lands not described in the petition.   The Court had not ascertained the title to any other lands, and could only award damages to the parties for the title to, or interest in the lands proposed to be taken, according to the extent

Winona & St. Peter Railroad Co. v. Denman et al.

of title to, or interest in the same, which the Court had ascertained they severally possessed. *Laws of 1855, Chap. 27, Sec. 5*; *The Canandaigua and Niagara Falls Railroad Co. vs. Payne*, 16 *Barb.*, (*S. C.*,) 273.

If the respondents were damaged, or claimed to be damaged in lands other than those described in the petition, it was at least their duty to appear before the Court upon the presentation of the petition, and before the commissioners were appointed, make their claim, satisfy the Court of their title to or interest in such other lands, and have the petition amended so as to embrace the same, or have the same embraced in the order of the Court. And not having done so, they must be deemed to have waived the assessment of damages, as to such other lands in their proceedings, and should not have been allowed to include them in such assessment upon the trial in the District Court.

II.—The Court erred in holding and deciding that the land taken must be paid for in money, and that no benefits, general or special, could be set off against the value of the land taken, and that so much of the Company's charter as allows benefits to be offset against the value of the land taken, is in conflict with the Federal Constitution.

1. Private property can only be taken for public use. *Embury vs. Conner*, 3 *Comst.*, 511.

2. Under constitutions like the Federal, in so far as the right to take private property for public use is concerned, the public have the constitutional authority to take, hold and convey the fee. *Rexford vs. Knight*, 15 *Barb.*, 627; *Heyward and others vs. The Mayor, Aldermen and Commonalty of the City of New York*, 3 *Seld.*, 314; *Rexford vs. Knight*, 1 *Kernan*, 314.

3. Where the fee is taken for public purposes, the benefits accruing to the owner from the construction of the improvement, in the enhanced value of the land, a part of which is taken, or of that which lies contiguous to and connected therewith, may be constitutionally set off against the value of the land so taken, as well as against the damages arising from such taking, to that portion of the land not taken. *Rexford vs. Knight*, 15 *Barb.*, 627.

4. In the case at bar the fee of the land is not taken for the use of the public. By the terms of the Company's charter, only an easement is acquired. *Laws of 1855, Chap. 27, Sec. 4 and 5.*

5. The rights of the respondents to, and authority and control over the lands upon which the easement is imposed, are unimpared as against all persons, except the Company, and they cannot use it for any purpose inconsistent with the enjoyment of the easement acquired. *Barclay vs. Howell's Lessee*, 6 *Pet. R.*, 498; *In the matter of John and Cherry Streets, in the city of New York*, 19 *Wend.*, 656, 666; 3 *Kent's Com.*, 432–3, *and cases there cited.*

The respondents being the owners of the soil, have a right to all ordinary remedies for the freehold. They may maintain an action of ejectment for encroachments upon it, or an assize if disseized of it, or trespass against any person who digs up the soil or cuts down any trees growing upon it. The freehold and profits belong to them. They may carry water in pipes under it, and have every use and remedy that is consistent with the servitude or easements of the Company over it.

6. In a case like this, the question is not, what is the value of the land taken? but, what damage has or will the owner sustain by reason of the imposition of the easement upon it. The act sounds in damages only; and the mode prescribed in the Company's charter, (*Sec. 5, Chap. 27, Laws of 1855,*) for estimating the same, is not in conflict with or in violation of any provision of the Federal Constitution. *Rexford vs. Knight*, 15 *Barb.*, 627; *McMasters vs. The Commonwealth*, 3 *Watts*, 294; *Commonwealth vs. Coombs*, 2 *Mass.*, 491; *Id. vs. Sessions of Norfolk*, 5 *Mass.*, 436; *Id. vs. Sessions of Middlesex*, 9 *Mass.*, 388; *Betts vs. The City of Williamsburgh*, 15 *Barb.*, 256; *Livingston vs. Mayor of New York*, 8 *Wend.*, 85; *Dwight and others vs. County Commissioners of Hampden*, 11 *Cushing*, 201; *Pennsylvania Railroad vs. Hiester, McClure & Reiley*, 8 *Barr*, 445; *Livermore vs. Town of Jamaica*, 23 *Vt.*, (8 *Washt.*,) 361; *Matter of Furman Street*, 17 *Wend.*, 650, 670; *Matter of William and Anthony Streets*, 19 *Wend.*, 690; *Troy and Boston Railroad Co. vs. Lee*, 13 *Barb.*, 169; *Niagara Falls Railroad Co. vs. Payne,*

16 *Barb*, 273; *Smith's Com. on Statutory and Constitutional Construction*, 469 *et seq.*; *McIntire vs. The State*, 5 *Blackf.*, 384; *The State vs. Digby*, 5 *Blackf.*, 543; *Indiana Central Railroad Co. vs. Hunter*, 8 *Ind.*, 74.

The rule for measuring the damages prescribed in the charter, and sustained by the cases referred to, is by no means new or peculiar. It is only the common law rule extended to the assessment of damages prospectively. What is the market value of the entire piece of property in the absence of the improvement? And what will it be when such improvement is made? And if the whole property will be as valuable after the improvement is made, or the road is constructed, as it was before, then the party is entitled to no damages, and if not, then to the amount in which the same will be depreciated.

III.—The Court did not err in holding and deciding that as to damages, beyond the value of the land actually taken, the jury might deduct therefrom any general benefits to respondents arising from the construction of the Railroad. *See cases before cited.*

IV.—The Court erred in allowing the witness Denman and other witnesses, to testify as to any additional fences that might be made necessary by the construction of the Railroad, and the cost of building the same, as an item of damages allowable to the respondents.

1. At common law, the proprietor of land is not obliged to fence it. That obligation is only imposed by prescription or contract, or by statute. *Wells vs. Howell*, 19 *Johnson's R.*, 385; *Rusl. vs. Low et al.*, 6 *Mass.*, 90.

This principle has equal application to the owners of land adjoining public highways; and where no statutes exist and no obligation is imposed by covenant or prescription, a railroad company is not bound to fence their land. *Hurd vs. Rutland and Burlington R. R. Co.*, 25 *Vt. R.*, 157–8; *Morse vs. Id.*, 27 *Vt. R.*, 49.

So it follows that a party cannot recover damages for that which he is not legally bound to do or suffer.

2. By *Sec. 19, of Chap. 3, of the Laws of* 1857, it was provided upon this subject, that the company should "construct and

maintain a good and substantial board and rail fence, four and one-half feet high, on both sides of their road."

This statute is not declaratory of any principle known to the common law, but imposes a duty and an obligation upon the company entirely unknown to that law, and under it, as a matter of course, no party would be entitled to have damages assessed against the company on account of fences.

3. By *Sec. 4, of Chap.* 19, *of the Laws of* 1862, it is provided: "That whenever the owner or occupant of any land through which said road shall pass, or adjoining the line of said road, shall enclose with a fence his or her lands, bounded in part by said road, said company shall construct and maintain its portion of the same, in the same manner that individuals are, or may be required by law, to erect and maintain partition fences, and all fences erected on the line of said road by said company, or by the owners or occupants of lands along the line thereof, shall be considered partition fences, and be, in all respects, governed by the laws in force regulating the same."

And by *Sec.* 13, *of the same Chap.*, all acts or parts of acts inconsistent with or repugnant to the provisions thereof, are repealed.

It would seem, from this mode of legislation upon the subject, that the Legislature intended to relieve the Company from a portion of the burden, in this regard, which it had imposed upon them by the act of 1857, before referred to, rather than to merely change it, from the performance of the act to paying for its performance. And this view of the subject seems all the more clear from the circumstance, that, in case the Company are compelled to pay the owner of the land for building and maintaining his half of the fence, they have no remedy by which they can compel him to do it.

The order of the Court below should be set aside and a new trial granted.

NORTON & MITCHELL, for Respondent.

I. The owner of the land taken for Railroad purposes is not confined in the estimate of damages for the taking and by the

building of the road, to the particular strip taken, or the particular parcel, enclosure or lot from which it is taken, such as a forty acre tract; but the whole contiguous farm lying together in a body, and cultivated as such, may be considered as to the effect thereon, the convenience or facility of its after use, the facility of communication and approach, &c., as proper subjects in estimating damages. The cases all assume this, as the proper course, not only in arriving at an estimate of damages, but also in estimating benefits to be deducted.

The doctrine advanced by appellant would limit the enquiry to the particular strip of 100 feet taken for the road-bed; for that is all that is described in the petition or in the order of the Court or report of the Commissioners. Such a rule would be quite as fatal to their right to go outside of the road-bed to prove benefits, as it would be to that of respondents to go beyond it to show damages. It is inconsistent with the very rule for estimating damages which the appellant himself subsequently claims. It is inconsistent with the provisions of the charter itself, which speaks of "compensation for the taking or injuriously affecting such land in real estate." *Session Laws of* 1855, *page* 86; 2 *Zab.*, 295; 6 *Wis.*, 643; 4 *Cush.*, 298; *Redfield on Railways, page* 178-9; 5 *Rich.*, 428; 22 *Vermont*, 387.

II.—The Court correctly held that for the land *actually taken*, the Railroad Company must pay in *money* and not in supposed benefits to other lands not taken. The terms "compensation" and "compensation in money" are convertible terms. The constitution of the United States requires, not that the public shall decide whether a party shall be entitled to *any* compensation, but that a *just compensation* shall be paid for the property taken. And that compensation implies at least the value of the thing taken. No citizen can be compelled to give his land without an equivalent. And that equivalent can be nothing else but the value in money of the thing taken. Nothing else is a legal tender either from individuals or from the public. *Constitution of United States, Art.* 5 *of Amendments;* 6 *Wis.*, 636; 5 *Ohio State*, 163;

5 *Dana*, 33; 9 *Dana*, 115; 4 *Chandler*, 72; *Pierce on Railways*, 212.

In this case the benefits were exceeded in amount by damages beyond the value of the land taken. Hence the ruling of the Court, even if an error, would be no ground for reversal of the judgment.

III. The court erred in holding that general benefits might be deducted from damages sustained beyond the value of the land actually taken. It is almost universally conceded that general benefits ought not as a matter of right to be deducted. Only special damages are allowed to be proven by the claimant. And only special or accidental benefits ought to be allowed as against special or accidental damages.

Many states have set this question at rest by constitutional provision. And those Courts which still allow general benefits to be deducted, do so generally with reluctance and simply because they are bound by judicial precedents or express provisions of statute. These general benefits are the precise object for which the public grant these rights and franchises to private corporations. They were designed for all; they belong to all; and may be claimed by all.

To allow these to a corporation is unjust, because it establishes for the corporation what is done for no one else, a sort of right in the property of others to the reflected benefits of its improvements, itself submitting to no reciprocity by affording others a compensation for the effect of their improvements upon the property of the corporation.

There is nothing in the charter of the appellant requiring "general benefits" to be deducted. The words used are, "the benefits to accrue to the claimant by the construction of the road."

Such statutes as this are to be construed strictly as against the corporation.

A construction contrary to natural justice, is to be rejected, unless the language of the statute is so plain as to admit of no other construction.

And we submit that when the statute speaks of "benefit to accrue to the claimant," it by no means necessarily refers to general benefits which were intended for all, belong to all, and can be claimed by all.

General benefits have been in numerous cases excluded by the ablest Courts of our country, in cases where the provisions of statute were substantially similar to the present.   4 *Cushing*, 291; 6 *Wisconsin*, 636; 4 *Chandler*, 84; 5 *Ohio State*, 147, (*Opinion of Bartley, J.*) ; 4 *Ohio*, 288 ; *Redfield on Railways, page* 135; *Pierce on Railways*, 207.

IV.—The Court properly allowed evidence in regard to extra fence rendered necessary to be built on account of taking the right of way through respondents' farm.   Such evidence is properly admissible as constituting one of the items of direct injury to the farm.

The act of March 10th, 1862, has no bearing whatever on this question except so far as it regulates the amount of fence each has to build.   It is merely a police regulation.   The Legislature might have required the owner of the land to build the whole of the fence.   In such case the whole of the extra fence would properly be taken into account is assessing damages.   In the present case, only half of such fence can be taken into account.   If the act of 1857 had remained in force, this fence would not have entered into the case at all as an item of damages.

As a general rule, an enumeration of the various circumstances tending directly and immediately to depreciate the value of the premises are proper to be considered, among which is the item of extra fencing.

This evidence is admitted, not with the idea that the owner will have to build so much extra fence, and therefore that he should be allowed a definite price for a definite amount of a certain kind of fence, as a distinct consideration from the depreciation of the value of the premises; but on the idea that it is to be taken into account, and is a proper subject of enquiry for the purpose of ascertaining the difference in the market value of the premises before and after the taking of the right of way, just as the inconvenient

shape in which the farm is left, difficulty of access caused by deep cuts or high embankments, or any other circumstance of that kind may be taken into the account.

The cases universally hold such evidence admissible; and this is done independent of the question whether the claimant has to build the whole fence, or only one-half, as in this case. 6 *Wisconsin*, 636; 2 *Clarke*, (*Iowa*,) 309; 4 *Paige*, 553; 4 *Chandler*, 82; *Redfield on Railways*, 369; 31 *Maine*, 215; 5 *Rich.*, 428; 23 *Vermont*, 386; 10 *Indiana*, 120.

In conclusion, it is conceded that on some of the points raised in this case, especially that in regard to the deduction of general benefits, there is much conflict of authority. This was perhaps to be expected, in view of the fact that the whole matter was a new subject before our Courts, none of the decisions dating back farther than a few decades. These questions are conceded to be (in the absence of any peculiarities of statutory provisions) legitimate subjects for judicial construction by our Courts. Wherever free from precedents or special statutory enactments, our Courts are fast settling down upon the following rule, which is generally conceded to be founded in equity and in accordance with constitutional requirements, viz:

That when land is taken by a Railroad Company for its use, the owner is entitled to recover.

1. The actual value of the land taken in money, without diminution on account of benefits or other set-off.

2. Such damages as he actually sustains, resulting immediately and directly from the proper construction of the road, but not for remote or speculative damages.

3. That in estimating such damages there is to be taken into account and deducted such benefits only as are peculiar to the owner and not enjoyed in common by the community.

Such a rule, founded as it is in common justice, the Courts of our State, untrammeled like those of other States, by judicial precedents, or statutory enactments compelling them to adopt any different construction, ought, we believe, to adopt as the law of this State for all time.

*By the Court*—BERRY, J.—Under the special act relating thereto, commissioners were appointed to ascertain and determine the compensation to be paid to the respondents for the appropriation of certain lands by the appellant for right of way. From the determination of the commissioners an appeal was taken to the District Court for the county of Winona by the present appellant.

The appellant moved for a new trial on sundry exceptions to the instructions and rulings of the court, and the case comes to this Court on appeal from an order denying the motion. On the trial below, the respondent, Jacob S. Denman, was called as a witness in his own behalf, and testified that he resided on a farm traversed by appellant's railroad. Question. How much land have you in that farm? This question was objected to by the appellant's counsel, on the ground, " (1) that under the charter it is immaterial and improper to enquire concerning other lands than those proposed to be taken, the damages to which the commissioners were appointed to appraise, for the purpose of laying a foundation for damages. (2) That the party is confined in his inquiries to the lands specified in the commission. (3) That in no case can respondent go outside of the subdivisions through which the road passes, the title to which has been ascertained and determined by the Court." The objection was rightly overruled. The mode of proceeding in a case of this kind is prescribed in *Section 5 of Chapter 27 of the Laws of* 1855, and without entering into details of verbal criticism, it is sufficient to say, that although the phraseology of different portions of the section is somewhat varied, in speaking of the same thing the difference is in words, not in meaning. Looking at the whole section, it is clear that the object of the Legislature was to provide a way for ascertaining the amount which should be paid as a *compensation* for the appropriation of land to the purposes of the contemplated railroad. And as this was to be a taking of private property for public uses, nothing short of *compensation* would satisfy the requirements of the Federal Constitution, under which the original charter of 1855 was granted, or of the Constitution of this State, under which the rights so granted were imparted to the appellant.

See *Amendments to Const. U. S., Art.* 5; *Const. Minn., Art.* 10, *Sec.* 4. According to approved lexicographers the primary signification of compensation is "equivalence," and the secondary and more common meaning is something given or obtained as an equivalent. We take it that the latter is the sense in which the word is used in the constitution and in the law referred to; and that whatever is necessary to be considered in order to determine what is an *equivalent* for the appropriation of private property is germane to the question of compensation. Now, without indulging in any metaphysical refinements, it is plain that the appropriation of a strip of land (as in this case) one hundred feet in width across and out of the body of a larger tract used and occupied as one farm, by which the farm is divided, and divided perhaps with great inconvenience to the owner, may be and in a great majority of cases would be a serious injury to the farm as a whole.

And to say that the payment of the value of the strip by the acre and by itself would be a compensation or equivalent for the appropriation would be worse than unreasonable. As to the objection that it is improper to enquire into the effect of the appropriation upon any lands other than those the title of which has been determined by the Court as preliminary to the appointment of commissioners, it is to be remarked, first, that in this case the Court only determined the title to the one hundred feet strip; second, that there is no provision in the charter requiring the Court to determine anything beyond this; and, third, that there is nothing prohibiting the commissioners from determining any fact which is necessary, in order to arrive at the just compensation to which the party interested is entitled. Now, if in order to ascertain what amount will be a compensation or equivalent for the proposed appropriation, it is necessary, as we have already determined, to take into account the effect of the appropriation on the whole farm, it follows in the absence of anything to the contrary, that it is the duty of the commissioners to enquire what the extent of the farm is; that is, in other words, how much land the party damaged is the owner of, and this of course involves the determination of title. And to say that this is an unusual way

Winona & St. Peter Railroad Co. v. Denman et al.

of settling title to real estate would not furnish a valid objection; and at any rate the party who considered himself aggrieved has the right of appeal to a court which, in the exercise of its ordinary and constitutional jurisdiction, is authorized to adjudicate upon questions of this nature.

There is nothing in the language of the order appointing the commissioners, which is inconsistent with this view of the matter. We see no force in the point that the District Court was only authorized to exercise an appellate jurisdiction, for while this is true there is nothing to show that there was any attempt to exercise any other. There is nothing to show that the commissioners did not act upon the views which we have expressed, and enquire into the ownership of the adjoining lands.

Whether they took into consideration in making their estimate all the facts of which the law authorized them to take cognizance is moreover unimportant.

The appeal is to be " entered, proceeded in, and determined in the same manner as cases on appeal from courts of Justices of the Peace;" that is to say, there may be a re-trial of the issues involved, and new evidence may be introduced in regard to matters which might have been contested below, without reference to the question whether they were or were not so contested. The respondent was also asked " what was the market value of the land taken last fall?" The then last fall was the time when the assessment of damages was made by the commissioners. The appellant objected to the interrogatory on the ground that the value is not the proper measure of damages, but that the proper measure is the difference in the market value of the lands affected by the taking without the railroad and with it, and that general benefits conferred upon these lands, and other lands of the respondents, should be set off against the damage if any to the lands taken.

It will be observed that this is a departure from the ground upon which the appellant based the objections which we have already considered. But we are unable to perceive how or where there was any impropriety in the question, even if the rule contended for in the objection be correct. The quantity and the value of the

land actually taken from the respondent, and so to speak *lost* by him, were certainly proper elements in calculating the depreciation of his property, and in instituting a comparison between its value without and with the railroad.

In fact it is difficult to perceive how the comparison could well be made without an estimate of the loss which he suffered. Even upon the theory that the correct standard of damages is the difference in value between the land with and without the Railroad, it would not be necessary even if proper to put the enquiry in this general form: "What is the difference between the value of the land with and without the railroad?" For an intelligent answer to that question must be the result of a process of calculation, and it is certainly quite as proper to ask for the steps of that process, (one of which must be an estimate of the value of the property actually taken,) as it is to ask for the general result. As to that part of the objection which contends that general benefits to the lands taken, and other lands of the respondent, should be set off against the damage to the lands taken, we might as well say here as any where, that the question as to the right to set off benefits, general or special, is not necessarily raised in this case. For it appears that the Court below ruled that benefits might be set off against the damages to the lands outside of the lands actually taken, and the jury in their verdict under this ruling, find damages to such outside lands. In other words, the jury find that the benefits which they were authorized to set off against damages to such outside lands were exceeded by such damages, and return a verdict for the balance. This being so, whether benefits could be set off against the value of the strip actually appropriated is not a practical question in the case, as such benefits were all deducted from the damages to outside lands, and none were left for further deduction. But the other branch of the objection made by the appellant to the question as to what the value was *last fall*, is "that the value should be shown at the time the company took possession." We think this branch of the objection also untenable. The right which the company sought to obtain in this case, not having been acquired by purchase or gift, could only be ac-

quired by proceedings through a commission, as pointed out in the charter.   These proceedings, the company, and not the land owner, had the right to  set on foot at any time, and  before any expenditure had been made upon the land.   If the company sees fit to go on and put the road in operation  before assessing the land damages, and is in consequence compelled to  pay an enhanced price corresponding with the  general  advance of property as the country grows  older, it was in its power  to  prevent  such  a  result. There is nothing in  the charter fixing the time the value at which is to furnish the standard of compensation.   The company acquire no right, and the  land  owner parts with none  until the action of the  commissioners ; and  it would  seem to be  not  unfair  to the company, that  the valuation should be  made as at the time when it was passed upon by the commissioners.   It was further contended on the argument that all enquiries as to value and damages should have been  based upon the  idea that  the  company did not take the fee, but  simply an easement.   It is unnecessary to determine in this  case what  estate  or  interest  the  company acquire. The charter specially provides that the commissioners are "to ascertain and determine the amount to be paid   *   *   *   as compensation for his *interest* or *estate*," to the person interested in the land appropriated.

Whether the Legislature were of the opinion that the company should be allowed  to  take the fee  or an  easement, this provision requires compensation for the *interest* or *estate* of those interested in the land without reference to the quantity or quality of such interest or estate, and it may be suggested that even if the company could take only an easement, what would be left to the land owner consistent with the enjoyment of the easement by a railroad company ?  and even his reversion, would ordinarily be of inconsiderable or no appreciable value, and  the  Legislature might with perfect fairness provide for compensation for the whole interest, or estate of those claiming any right to the lands.

Objections were  also made  to the  evidence offered  by the respondents, for the  purpose of showing  the  additional expense of fencing occasioned by the construction of the road.

Keeping in view the idea of *compensation*, we think the objections were rightly disregarded. The evidence would tend to show what additional expense, resulting from the construction of the Railroad, would be incurred by the respondent in order to make his adjacent land available for the ordinary purposes of good husbandry. It was proper for the jury to take this into consideration.

The law regulating the matter of fencing was read to the jury, and there was no chance for mistake as to the liability of the company to build one-half of the fence by the terms of the law. For the other half, the cost of erecting and maintaining which would fall upon the respondent it was proper to award compensation. It was objected by the *respondents* that the Court erred in holding that general benefits should be deducted from the injury to lands other than the strip appropriated for right of way. But as this ruling was favorable to the appellant, who finds no fault with it, and as the respondent does not appeal, and as we deny a new trial, it is unnecessary to consider the objection at this time; and we may say in general that the subject of the deduction of benefits general or special in cases similar to this is not necessarily before us in the case under consideration. The question is one of very great importance in the infancy of our railroad system, and presents intrinsic difficulties which are greatly enhanced by the diversity of opinion in the adjudged cases. Upon this as well as some other questions which were raised upon the trial we refrain from expressing any opinion which, as it would not be necessary, would be regarded as little better than an *obiter dictum*.

The order denying the motion for a new trial is affirmed, and the action remanded.