THE SEDALIA, WARSAW & SOUTHERN RAILWAY COMPANY, Respondent, v. DANIEL T. ABELL, Appellant.

Kansas City Court of Appeals, July 6, 1885.

1. CONDEMNATION PROCEEDINGS—INSTRUCTION.—Where in a proceeding for condemnation of land taken for a railroad, the court directed the jury not to estimate inconveniences common to other lands in the same neighborhood, *Held*, to be authorized by the cases of *Springfield v. Schmook* (68 Mo. 394), and *Wyandotte, &c., R. R. Co. v. Waldo* (70 Mo. 629). Nor was the direction of the court that the jury should "not take into consideration any prospective use of said land by laying out the same into town lots and blocks, but consider the market value of said land at the time, as shown by the evidence," objectionable as inconsistent with other instructions. The exclusion is merely of any matter of conjecture.

2. ——— COST OF ERECTING FENCES, ETC.—Where, in the same proceeding, the jury were not permitted to consider the costs of erect-

ing fences, etc. *Held*, proper : it being the law in this state that railroad corporations shall fence their tracks, and penalties, in shape of double damages to stock, prescribed in case they do not. *Jones v. R. R. Co.*, 68 Ill. 380; *R. R. Co. v. Walden*, 11 Minn. 515.

APPEAL from Pettis Circuit Court, HON. JOHN P. STROTHER, J.

*Affirmed.*

Statement of case by the court.

This is a proceeding under the statutes to condemn a portion of defendant's property ; the record stating that a plat was introduced, " which was admitted to be a correct plat of the city of Sedalia, and the land of the defendant, over which the railway is located, and the adjoining lands, which showed that the town or city of Sedalia was laid out in town lots up to and adjoining the premises of the defendant, and that upon the town lots so laid out adjoining the premises of the defendant were built houses and residences."

The court, at plaintiff's instance, gave the following instruction :

"The court instructs the jury, on the part of the plaintiff, that in estimating the damages to which the defendant may be entitled, they will consider the quantity and value of the land taken by the railroad for the right of way, and the damage, if any, to the remainder of the track in question, by reason of the road running through it, and deduct from these amounts the amount or value of the benefits, if any, peculiar to said tract of land, from the running of the road through the same, and by peculiar benefits is meant such direct and peculiar benefits as result directly to this tract of land from the building of the road, and not the general benefits derived in common with other lands in the same neighborhood, from the building of said road, and in estimating said damages, the jury will not take into consideration the cost of constructing any fences, opening gates, bars, crossings or cattle guards along and across said road ; nor will they take into consideration any prospective use

of said land by laying out the same into town lots and blocks, but will consider the market value of said land at the time, as shown by the evidence."

The following instructions were given for the defendant:

"1. If the jury believe, from the evidence, that the defendant, Abell, was damaged by reason of the running of the railroad of the plaintiff through the tract of land in controversy, they will find for him in such sum as they find from the evidence he was so damaged. And in estimating the damage to said land, the jury will consider the quantity and value of the land taken by the railroad company for a right of way, to-wit: A strip of land one hundred feet wide through said land, and the damages to the whole of said land by the reason of the said road running through it, and deduct from these amounts the benefits, if any, peculiar to said tract of land, arising from the running of the road through the same. And by peculiar benefits to the land, is meant such benefits as that land derives from the location of the road through it as are not common to the other land in the same neighborhood.

"2. In arriving at the value of the land in controversy, the jury will consider what its market value was in January, 1880, for any use or purpose for which it might have been sold."

The court, of its own motion, and against the defendant's objections, gave the following instructions:

"The court instructs the jury, that, from all the facts and circumstances in evidence, it is for you to determine what, if any, damages, the defendant, Abell, sustained by reason of the appropriation of a part of his lands for a railroad, and such damages are to be his actual damages to said lands through which the road is located, estimated at the time of taking the same with reference to what it was then worth for sale, in view of the uses to which it might be put, and not based upon matters purely speculative or fanciful, which might or might not happen, and such inconveniences, if any, as

are common to other persons and lands in the same neighborhood, are not to be taken into such estimate.

"And, if from the evidence you believe that all, or any part, of the defendant Abell's land received any benefit peculiar to it, by the road running through it, you will deduct from the amount of any damages found, the amount of such benefit. By peculiar benefit to the land is meant such benefit as the land derived from the location of the road through it, as is not common to the other land in the same neighborhood."

To the giving of which instructions the defendant then and there excepted.

Under the instructions the jury found a verdict for the defendant for the sum of five hundred and twelve dollars and fifty cents.

B. G. WILKERSON and JNO. MONTGOMERY, JR., for the appellant.

I. The instruction given at the request of plaintiff told the jury "that in estimating the damages to Abell's property, they should not take into consideration the cost of constructing any fences etc., along and across said road." This was erroneous. It is based on the theory that the railroad is required to build and maintain fences, but this leaves out of view altogether the damages and inconveniences which A would suffer for three months, by reason of the want of such fences, etc. And, if the company fail to build and maintain the fences, he can build and sue an insolvent railroad company for reimbursement. Besides, the land is within the corporate limits of Sedalia, and the company is not required to fence its track through Abell's land. *Edwards v. H. & St. J. Railroad Co.*, 66 Mo. 569 ; *Cousins v. Same, Ib.* 572.

II. Said instruction also told the jury "they should not take into consideration any prospective use of said land by laying out the same into lots and blocks." This is manifestly erroneous. It excluded from the jury the most important element going to make up the value of said land, and the amount it was damaged by said rail-

road. The principal reason why land is more valuable adjacent to a city is the prospect that it will be needed for city purposes.

III. The court, of its own motion, instructed the jury that "such inconveniences, if any, as are common to other persons and lands in the same neighborhood, are not to be taken in such estimate" (of damages). This is erroneous. The defendant, Abell, was entitled to be fully paid for all *actual damages* done to his lands (less any peculiar benefits), and is not to be reduced because of like damages and inconveniences to other persons. *Railroad Co. v. Ridge*, 57 Mo. 601 ; *Railroad Co. v. McComb*, 60 Maine 290 ; Mills on Eminent Domain, sect. 162.

WILLIAM S. SHIRK, for the respondent.

I. The instruction as to damages for cost of *fencing* was proper. It is uniformly held in states, like ours, where the statute gives the land owner an action against the company for failing to fence, and for the cost of such fencing, etc., when constructed by him, that his remedy, under the statute, is sufficient. *Jones v. Railroad Co.*, 68 Ill. 380; *Railroad Co. v. Walden*, 11 Minn. 515; *March v. Portsmouth Railroad Co.*, 19 N. H. 372. And if the railroad company is neither bound to fence nor pay defendant for fencing, it is for the same reason that defendant *himself* would not be permitted to fence; *namely*, that it would be *unlawful* for it to do so. Besides, the plat does not show the land to be in the corporate limits. The case of *Edwards v. Railroad* (61 Mo.) is not applicable.

II. There is no error in the instruction as to the "prospective use" of the land. It only told the jury to take the *land as they found it*, and not conjecture what the damage might be, in its possible future use for town lots. This would be purely speculative—it might, or might not be laid off into lots and blocks.

III. The instruction given by the court, of its own motion, as to "inconveniences common to other persons and lands in the same neighborhood," is the exact

language of an instruction given and evidently approved by the supreme court in *Railroad Company v. Waldo* (70 Mo. 629). And the principle announced in this clause of the instruction is approved by ample authority. Cooley's Const. Lim. (3rd Ed.) p. 569, and note 2.

IV. Defendant's objections are purely technical at best.

Opinion by Ellison, J.

Defendant complains of the instruction directing the jury not to estimate inconveniences common to other lands in the same neighborhood. This objection is not tenable under the *City of Springfield v. Schmook*, 68 Mo. 394–6; Cooley's Constitutional Limitations 566.

A like instruction is found in the case of the *Wyandotte, Kansas City & Northwestern Railway Company v. Waldo* (70 Mo. 629), and though not discussed in the opinion, it is set out in full and appears not to be criticised.

Defendant likewise complains of that part of the first instruction for plaintiff in which the jury are told not to "take into consideration any prospective use of said land by laying out the same into town lots and blocks, but will consider the market value of said land at the time, as shown by the evidence," as being contrary to law, and contradictory of and inconsistent with the other instructions in the cause.

The instructions taken together present the case properly to the jury. By that part of the first instruction for plaintiff quoted above, it is not meant to exclude from their consideration the fact that the property lay adjoining the city of Sedalia, and was so situated that it would make desirable property for lots and blocks; but only that they should not consider any use of it in the future, or as to what might or might not be done with it in the future. The idea being to exclude from their consideration any matter of conjecture as to what might be done with the land in the way of laying it out into town

lots and blocks, a thing which might not occur. If he should get damages from a consideration of the use he might in the future make of it, in laying it off into lots, it may be he never would have done the thing, or put the property to the use for which he has recovered damages. That it was not meant to exclude from the jury a consideration of the uses for which it was available or what it was worth at the time of condemnation, considering the uses for which it might be put, is clear; for we find the jury are told in the second instruction for defendant, to consider the market value of the land at the time for any purpose for which it might be sold. And so the court, in the instruction given on its own motion, says the jury will allow damages to the land "with reference to what it was *then* worth for sale, in view of the uses to which it might be put, and not based upon matters purely speculative or fanciful, which might or might not happen." The instructions, taken together, simply mean that the jury should not allow defendant for a "prospective use" he may never make; but may allow him what the land was then worth, considering its adaptability to be used for any purpose, which may have appeared in evidence. Defendant also objects to that portion of plaintiff's instruction not permitting the jury to consider the cost of erecting fences, etc. It being the law in this state that railroad corporations shall fence their tracks, and penalties in shape of double damage to stock being prescribed in case they do not; we think the instruction was proper. *Jones v. Ry. Co.*, 68 Ill. 380; *Winona Ry. Co. v. Walden*, 11 Minn. 515; *Winona Ry. Co. v. Denman et al.*, 10 Minn. 267–284.

It follows the judgment should be affirmed. Hall, J. concurs. Philips, P. J., not sitting.