THE KANSAS CITY, NEVADA & FT. SMITH RAILROAD·
COMPANY, Respondent, v. JAMES S. DAWLEY
*et al.*, Appellants.

Kansas City Court of Appeals, June 13, 1892.

1. **Condemnation Proceedings:** MEASURE OF DAMAGES: INSTRUC-- TIONS. In a proceeding to condemn a railroad right of way, an instruction is misleading which excluded from the consideration of the jury certain elements of damage, which, if special and peculiar to defendant's land, should have been considered, but if they were common to other lands in the neighborhood, portions of which had not been taken, they should not have been considered.

2. ———: CONSEQUENTIAL AND DIRECT DAMAGES: INSTRUCTION. An instruction telling the jury not to consider "consequential damages," but only "direct and immediate damages," without defining these terms, is improper.

3. ———: EVIDENCE OF VALUE: OPINIONS: INSTRUCTIONS. Where property is without a market value, the law allows the next best evidence, and the opinions of persons shown to be judges or to have knowledge of the value of lands in the vicinity, may be received; and an instruction telling the jury to disregard as evidence the opinions of any and all witnesses as to value, where the jury deem such opinion based upon "arbitrary prices," asked for lands in the vicinity, without defining· "arbitrary prices" further than that it did not mean "market value," is misleading in this case.

4. **Witnesses:** CREDIBILITY OF, FOR THE JURY: INSTRUCTION. An instruction prescribing rules by which the jury are to ascertain the· credit due to a witness, which is always a question for the jury, is condemned on that account, and for commenting on the evidence.

5. ———: COMPETENT AS EXPERT TO VALUE. A witness, unfamiliar with the land in question, or that in the vicinity, would not be rendered competent by viewing the land after its appropriation as a railroad right of way, and this without regard to his station or occupation.

*Appeal from the Jackson Circuit Court.*—HON. R. H.. FIELD, Judge.

REVERSED AND REMANDED.

*Gage, Ladd & Small*, for appellants.

(1) The second instruction asked by and given for the railroad company is not only erroneous, but is ingeniously framed for the purpose of misleading the jury. This instruction pract: ally took from the jury all the testimony in the case relating to the damages done to the land not taken, and then contradicted itself by an intimation that the jury might consider such testimony, and then practically took back that intimation by belittling and ridiculing the effect of that testimony, if perchance the jury should consider it. The third instruction given for the railroad tells the jury that "they must not take into consideration any consequential damages." Under our constitution consequential damages to private property for public use are precisely what the individual is entitled to compensation for, and he is entitled to have the jury so instructed in a straightforward, unambiguous manner. This instruction is a beautiful straddle—if anything a more perfect and beautiful specimen of that art—than instruction, numbered 2. *Railroad v. Baker*, 102 Mo. 561; *Railroad v. Story*, 96 Mo. 622; *Railroad v. Blume*, 27 N. E. Rep. 601; *Railroad v. Graney*, 25 N. E. Rep. 798; 3 Sedgwick on Damages [8 Ed.] secs. 1100, 1101.
(2) The fourth instruction given for respondent violates most of the general rules of law relating to instructions to juries. In the first place it tells the jury that the words "market value," as used in the instruction of the court, "do not mean arbitrary prices that are and have been asked for land in the vicinity of this in question." There was no evidence as to prices asked for land in the vicinity, much less was it admitted that those prices were unreasonable. This language was intended to mislead the jury, and practically tell

them in so many words that the price appellants' witnesses put on this farm was arbitrary and unreason-able. That was a question for the jury to pass on. Market value is made up of not only what purchasers are willing to pay, but what sellers are willing to take. Mills on Eminent Domain, sec. 168; *Lawrence v. Boston*, 119 Mass. 129; *Conway v. Railroad*, 24 Mo. App. 235; *Willis v. Stevens*, 24 Mo. App. 494; *Elliot v. Keith*, 33 Mo. App. 580; *State v. Smith*, 53 Mo. 267; *Matthews v. Railroad*, 26 Mo. App. 76; *Campbell v. Baker*, 34 Mo. App. 140. (3) Respondent's instruction, numbered 6, is a stump speech on the credibility of appellants' witnesses. The credibility of witnesses and the weight of testimony are a matter exclusively for the jury to pass on, and the court ought not to single out certain facts calculated to affect the crebibility of the witnesses of one of the parties only, or the weight of their testimony, and comment on those facts in an instruction to the jury. *State v. Cushing*, 29 Mo. 215; *State v. Schoenwald*, 31 Mo. 145.

*Trimble & Braley*, for respondent.

(1) The instruction, numbered 2, given at the request of respondent is not erroneous. Mills on Eminent Domain [2 Ed.] secs. 182, 193; *City of Springfield v. Schmook*, 68 Mo. 394-6; *Railroad v. Waldo*, 70 Mo. 629; *Railroad v. Abell*, 18 Mo. App. 632-7. (2) The instruction, numbered 3, given for respondent is not open to the criticisms directed against it. For various elements of damages denominated "consequential," and, hence, not allowable, see Mills on Eminent Domain [2 Ed.] ch. 17, and authorities cited. (3) The instruction, numbered 4, given for respondent, correctly declares the law, and is not open to the objections urged against it. (4) Respondent's instruction, numbered 6, which is denominated "a stump

speech on the credibility of appellants' witnesses," is always given when asked, is undoubtedly the law, and I have never heard it questioned before; and in this case was loudly called for. No set of witnesses ever gave more unbridled range to their fancy than did appellants' witnesses in this case; but the instruction is not limited to appellants' witnesses. *State v. Gee*, 85 Mo. 647.

SMITH, P. J.—This was a proceeding begun by the plaintiff against the defendant for the condemnation of a strip of land for public use containing four and thirty-four-hundredths acres running across the defendant Dawley's farm, consisting of one hundred and sixty acres. There was a verdict and judgment in favor of the defendant Dawley, from which he appeals.

I. The appealing defendant assails the judgment on the ground that the trial court erred in its action in the giving and refusing of instructions. He challenges the correctness of that given for the plaintiff which told the jury that in estimating the damages, if any, that the defendant Dawley will sustain by reason of the construction and operation of the railroad across his farm, they must not take into their estimation the inconveniences to him that are consequent upon the lawful and proper use of the railroad, and are common to other land-owners in the neighborhood, such as blowing a whistle, the liability of fire, the noise of trains and the liability to frighten farm animals, and the danger and extra precaution necessary to be taken in crossing *to and fro from one side of the farm to the other with stock as distinct elements of damage.* These matters are only permitted by the court to be shown by the evidence for the jury to consider for what they deem them worth, if anything, as affecting the market or selling value of the land not taken by the railroad

company, and are not to be considered by the jury in any other light.

Private property shall not be *taken* or *damaged* for public use without just compensation. Such compensation shall be ascertained by a jury, in such manner as may be prescribed by law. Const., art. 2, sec. 20. It has been repeatedly declared by the supreme court of this state that in order to determine the damages sustained, where the whole property has not been taken, the effort should be to find the value of the land taken and then determine how much the land left was increased or diminished by reason of the appropriation. *Springfield v. Schmook*, 68 Mo. 394; *Railroad v. Waldo*, 70 Mo. 629; *Railroad v. Abell*, 18 Mo. App. 632. In applying this rule the jury should consider in favor of the land-owner, not only the amount and value of the land actually appropriated, but they should take into consideration the shape and size of the parcel or parcels remaining, the difficulty of access and communication between the different parts, any interference with the water supply, the danger to which the occupants of the farm and the stock thereon will be exposed, and also that from fire to buildings, fields and crops. These and other similar inconveniences which tend to deteriorate the value of the farm and contribute to produce damage to the land not taken should be considered. *Railroad v. McGrew*, 104 Mo. 283; *Railroad v. Baker*, 102 Mo. 553; *Railroad v. Waldo*, 70 Mo. 629; *Railroad v. Blume*, 27 N. E. Rep. 601; *Railroad v. Graney*, 25 N. E. Rep. 728; Lewis on Eminent Domain, secs. 496, 497; Mills on Eminent Domain, sec. 162. Entertaining, no doubt, this view of the rule, the court gave defendant's fifth instruction which informed the jury that in determining the decrease, if any, in the market value of defendant's farm caused by the construction and operation of plaintiff's road, as shown in the evi-

dence, the jury will consider the manner the farm is divided by the railroad, the increased difficulty of access to and from the severed portion, the disfigurement, if any, to the farm, the increased difficulty of reaching the public road, if any, the ordinary danger from accidental fires to fences, fields or farm buildings (not resulting from negligence), and generally all such matters as, owing to the particular location of the railroad through the farm, as may, in the judgment of the jury and from the evidence in the case, affect the convenient and safe use and future enjoyment of the farm considered as a whole, in so [far as they affect the market value thereof. But, in the application of the rule already stated, the jury must not take into consideration such inconveniences to the owner of the land so taken as are the consequences of the lawful and proper use of the railroad, in so far as the same are common to the other land-owners in the neighborhood, portions of whose lands are not taken. *Railroad v. Waldo*, 70 Mo. 629; *Railroad v. Ridge*, 57 Mo. 599; *Railroad v. McGrew, supra; Railroad v. Richardson*, 45 Mo. 466; *Bridge v. Ring*, 58 Mo. 496.

Thus, it is seen, that the distinction is quite plain that the inconveniences arising to the land-owner, by reason of the appropriation of a part of his land by a railroad company, are divisible into two classes,—the one where the damages resulting are direct, special and peculiar to his land, and for which he is entitled to compensation, and the other is general and common to other land-owners in the neighborhood, portions of whose lands have not been taken; though the latter may depreciate his land, yet no recovery can be had therefor,—it is *dammum absque injuria*, as to that. In awarding the just compensation required by the constitution, there must be excluded from consideration those benefits which the owner receives only in common with

the community at large, in consequence of his ownership of other property, and, also, those incidental injuries to the other property such as would not give to other persons a right to compensation, while allowing those which directly affect the value of the remainder of the land not taken. Cooley on Constitutional Limitations, 567, 570. Just compensation thus estimated would make the land-owner whole, and leave him in as good situation as his neighbor, no part of whose property has been taken.

Now returning to the consideration of the plaintiff's third instruction, and having in view the principles to which we have just adverted, it is impossible to escape the conclusion that it is very misleading and confusing in its enunciation. It enumerates several distinct elements of damage, which the jury were bound to take into consideration in determining the extent of the depreciation of the defendant's land. In so far as these elements were special and peculiar to the defendant's land they should, and in so far as they were general or common to other lands in the neighborhood, portions of which had not been taken, they should not have been taken into consideration by the jury. Any one or all of them, if found from the evidence to exist, were entitled to consideration in determining the real question the jury were called upon to decide. If this instruction had told the jury that the inconveniences it mentions could not be taken into consideration only in so far as they were general to other lands in the neighborhood, portions of which had not been taken, then, in connection with the defendant's fifth, the jury would have been furnished with a plain and unambiguous rule, about the meaning of which there would have been room for neither doubt or cavil. This instruction of plaintiff was no doubt designed to limit and restrict the application by the jury of the rule declared by defend-

ant's fifth instruction, but it is not probable that the jury so understood it. Besides this, it may be well objected that the phraseology of the limiting clause of the instruction is such as was well calculated to mislead the jury as to the importance and value they were to attach to the evidence in respect to the inconveniences therein referred to. Such an instruction was better calculated to mislead than to enlighten the mind of the jury.

II. The plaintiff's second instruction directed the jury that in estimating the damages, if any, accruing to the defendant, from the construction and operation of the railroad across his farm, they must not take into consideration any consequential damages, but must consider only the value of the land taken and the direct and immediate damages, if any, to the selling value of the land not taken. This instruction was improper. There was no instruction defining what was meant by the terms, "consequential damages," nor of "direct and immediate damages."

If there had been such an instruction defining each, so that the jury could have been able to tell which to allow compensation for, and which not, then the instruction would have been well enough.

III. The defendant further complains of the action of the court in giving plaintiff's fourth instruction which declared that the words "market value," as used in the instructions by the court, do not mean arbitrary prices that are, and have been, asked for land in the vicinity of those in question, nor do these words mean what the land may be worth to Mr. Dawley only, nor to any other particular individual only, but these words mean only the fair selling price of the land in question, considering the condition of the market therefor, and the jury are instructed that they must disregard as evidence the opinions of any and all witnesses as to such value where the jury deems such

opinion based upon arbitrary prices asked for lands in the vicinity of the lands in question.

Mr. Rice, in his work on evidence, section 195*f*, states that "I may safely affirm as an indisputable proposition, sustained by the great preponderance of authority, that real estate values in the vast majority of instances may be proved by the opinions of ordinary witnesses who are acquainted with the real estate in question, or who have an intimate knowledge of real estate similarly situated in the immediate vicinity." And such is the rule in this state. In *Tate v. Railroad*, 64 Mo. 149, it was said that witnesses familiar with the value of property are permitted to state their opinion as to its value. And a like ruling was made in *Thomas v. Malinkrodt*, 43 Mo. 58. It has been held that a farmer living in the neighborhood who has had knowledge for years of a farm through which a right of way is condemned, and has known its location, advantages, character of soil and market value compared to other lands surrounding it, is competent to testify as to the value of the land taken and damages to the whole tract. *Railroad v. Cooper*, 42 Kan. 561. If the property is, however, without a market value, then the law allows the next best evidence to ascertain its value. The property then may be compared with other property; the value may be shown by persons who are shown to be judges, or who have knowledge of the value of real estate in that vicinity, and their opinions of the value of the property may be given. *Railroad v. Chapman*, 38 Kan. 307.

Tested by these rules it would seem in view of the evidence that the instruction just quoted was improper. If, as it seems is the fact, there was no market value of the defendant's property at the time of the appropriation, then the opinions of persons familiar with it were properly received to estabish its

value. And so we conclude that the instruction in question was improper in so far as it told the jury to "disregard as evidence the opinions of any and all witnesses as to such value where the jury deem such opinions based upon arbitrary prices asked for lands in the vicinity of the lands in question." There is no definition of what is meant by "arbitrary prices" further than that the term does not mean "market value." The instruction, so far as it relates to arbitrary prices, was improper and calculated to mislead the jury and should not have been given.

IV. It is further contended that the plaintiff's fifth instruction in respect to the weight of the evidence and credibility of the witnesses should not have been given in that form. The credibility of the witnesses and weight of the testimony are always matters exclusively for the jury to pass upon. But this instruction told the jury in determining other matters they should take into consideration the result of similar claims which any witness may have or expects soon to have against plaintiff, and "that if they believed that the opinion of any witness as to the value of the lands or the damage done to them is not based upon an intelligent reason, but is merely arbitrary or unreasonable, the jury may disregard such opinion." These and many other like rules are prescribed in the instruction by which the jury were to ascertain and determine the credibility of the defendant's witnesses and the weight to be given their testimony. This instruction goes quite too far. It invades, in a measure, the province of the jury. Besides it is in part a comment on the facts which the defendant's evidence conduced to prove. As was said in *State v. Anderson*, 19 Mo. 241: "What is striking in the instruction is the attempt of the court to prescribe rules for the jury by which they are to ascertain the credit due to a witness. When a

witness testifies to jurors, they are the exclusive judges of the weight to be given to his testimony."

V.   Whether the defendant's third instruction should have been given or not, is more than we can tell, since his abstract does not embrace all the evidence in the case.

VI.   The competency of all the witnesses on the question as to the value of the land should be tested by the rule stated in the preceding paragraph.   It is sufficient to say that, according to the rule just stated, one called as a witness, being neither familiar with the land in question nor that in its vicinity, would hardly be rendered competent by the mere viewing of the former, after the appropriation, to testify an opinion as to the value thereof, whether he be " a railway president, chattel-mortgage broker, doctor, life-insurance agent, money loaner in a city " or farmer.   Such witness would be lacking in an essential qualification, i. e., knowledge.

The judgment will be reversed and cause remanded. All concur.