1834.

In the matter
of the Rensse-
laer and Sara-
toga Rail Road
Company.

In the matter of THE RENSSELAER AND SARATOGA RAIL ROAD COMPANY.

A rail road company is interested in the keeping up of the partition fences which separate the lands taken for the use of their railway from the adjoining lands ; and where there is no special provision on the subject in their act of incorporation, the company is bound to make and support one half of the partition fences.

In estimating the damages which the owner of lands taken for the use of a rail road will sustain by the running of the road through his lands, he should be allowed for the expense of making and maintaining only one half of the partition fences, as the other half the rail road company are liable to make and maintain.

THE corporation of the Rensselaer and Saratoga Rail Road  September 1. Company having appropriated for the use of its railways the lands of certain individuals, without their consent, and being unable to agree with them as to the price of the lands thus taken, commissioners were appointed by the chancellor, in pursuance of the act of incorporation, to appraise the damages which the land owners would sustain from such appropriation of their lands for the use of the company.   The owners of the lands, upon the investigation of the subject before the commissioners, claimed, as a part of the damages which they would sustain by the laying out of the rail road through their farms, the expense of building the whole of the partition fences between the lands taken for the use of the corporation and the remaining lands of such owners, and of keeping such fences in repair during the existence of the charter. The commissioners of appraisement allowed this claim *pro forma*.   But, for the purpose of enabling the court to determine the question as to the right to such damages upon the coming in of the report of the appraisal, the commissioners made a separate or distinct estimate of that portion of the damages which each land owner would sustain, in consequence of the extra fencing that would become necessary to separate his other land from that taken by the corporation.

*1834.*

*In the matter of the Rensselaer and Saratoga Rail Road Company.*

*J. Paine & A. Brown*, for the corporation.

*G. W. Kirtland*, for the land owners.

THE CHANCELLOR. The additional fences which these land holders would be obliged to build and maintain, in con-. sequence of the laying of the rail road through their farms, formed a proper subject of consideration in the estimate of the damages. And if the land owners are either legally or equitably bound to build and maintain the whole of the partition fences, between their own lands and those which are taken for the use of the corporation, then the amount allowed by the commissioners is right. In the ordinary case of a turnpike road, running through the lands of an individual, neither the turnpike company or the public has any interest in protecting such road against encroachments of cattle or other animals from the adjacent lands, as such encroachments will not materially affect the ordinary use of the road. And neither law nor equity will compel the turnpike company to maintain fences, from which it is to derive no benefit. As the owner of the lands adjoining the road must in such case, from necessity, forever afterwards maintain the whole fence, unless he is willing to let his lands lie open as a common, the entire expense of maintaining such additional fences as are rendered necessary by the laying of the turnpike through his lands, forms a proper subject of consideration in the estimate of the damages which he will sustain by reason of the laying out of such road. The same principles are applicable to the assessment of damages, where a common highway is laid out through the lands of an individual. And he must, in that case, also, obtain his compensation for the expense of maintaining the whole fence in the first instance, by way of damages ; as he can never afterwards call upon the public to contribute towards such expense.

In the case now under consideration, however, the land holders are under a mistake in supposing that they will be obliged to make and maintain the whole of the partition fences, between their lands and the lands of the rail road company, at their own expense. The manner in which a

rail road is to be used, renders it necessary that the company should secure their road against the encroachments of cattle, sheep and swine from the adjacent lands ; to ensure the safety of the persons and property of those who may pass upon the road. And the company will be answerable for any injuries which may be sustained from a neglect to adopt the obvious means of guarding against accidents arising from that source. If the owners of the adjacent lands elect to let their lands lie open to the commons, the rail road company will, of necessity, be compelled to make the whole of the partition fence, to secure itself against such encroachments from cattle. And, therefore, if the owner of the adjoining lands finds it necessary to have his land enclosed, either for the purposes of cultivation or to restrain his own cattle, he will have an equitable claim upon the rail road company to make and support one half of the partition fence. The 30th section of the article of the revised statutes, relative to division and other fences, (1 R. S. 353,) does not in terms apply to this case ; because the lands of the rail road company are not in fact enclosed at those points where their road is crossed by the public highways on a level therewith. But the case of a rail road company, which has a deep interest in fencing against cattle, &c. from the adjoining lands, comes clearly within the equitable principle adopted by the legislature in this section of the statute ; that where the owners of adjoining lands are to receive a common benefit from a division fence between them, each shall contribute a moiety towards the erection and support of such fence, so long as the common benefit continues. In this case, therefore, in analogy to the statutory provision, equity will compel the rail road company, and the adjoining land owner, to contribute equally towards the erection and maintenance of the partition fence. And if either shall neglect or refuse to make or repair his or their proportion of such fence, after reasonable notice, the other may make the whole, and may recover the contributory share of the one so neglecting or refusing, in the equitable action of assumpsit.

This principle of equitable contribution between the owners of adjoining lands is not new ; neither does it depend alone

1834.

In the matter of the Rensselaer and Saratoga Rail Road Company.

1834.

In the matter
of the Rensse-
laer and Sara-
toga Rail Road
Company.

for its support upon express statutory provisions.   It was originally derived from the civil law, and is constantly acted upon in those countries where the equitable principles of the civil law regulate the rights of vicinage.   (*Civil Code of Louisiana, Art.* 671 to 686.   *Code Nap. Art.* 653 to 670.   *Vander Linden's Inst. of Holland, Lib.* 1, *ch.* 11, § 3.   *Bell's Law of Scot.* 279, *Art.* 1086.)   The same principle was also acted on by this court in the case of *Campbell* v. *Mesier,* (4 *John. Ch. Rep.* 334,) where the late Chancellor Kent compelled the owner of a building in the city of New-York to contribute his rateable portion of the expense of rebuilding a party wall, from which the owners of adjoining lots received a common benefit.

It would undoubtedly have been better for both parties, and would perhaps have saved some useless litigation hereafter, if the legislature had made it the duty of the rail road company to keep up and maintain the whole of the partition fences between their railway and the adjoining lands of other persons. But as the legislature has not seen fit to adopt that principle, and each party being bound to support one half of the fence, the estimated amount of damages, on account of the fencing, must be diminished one half.   And the rail road company must pay the amount as thus reduced, together with the general damages sustained by the land owners, as ascertained and determined by the commissioners ; the appraisal of damages, so far as regards these parties, being correct in other respects.