FERRIS *vs.* VAN BUSKIRK.

Where a railroad company, in pursuance of the section of the statute requiring all railroad corporations to erect and maintain fences on the sides of their roads, built a fence of rails, called a crooked or Virginia fence, on the line of its land, so that every alternate corner projected from three to three and a half feet over the line, upon the land of the adjoining proprietor, while the intermediate corners projected a like distance over the line, upon the land of the company; *Held,* that the fence was erected upon the *sides of the railroad,* within the meaning and contemplation of the statute; and that the company committed no trespass upon the land of the adjoining proprietor, in erecting the same in that manner.

*It seems,* it has from usage, time out of mind, become a part of the common law of the state that adjoining owners of farms may erect Virginia fences, as division fences, occupying the necessary quantity of land upon each side of the mathematical line; and that such fence is a fence, in contemplation of law, upon the line between the adjoining farms, and is a fence "on the side of" the farm.

THIS was an appeal by the plaintiff from a judgment of the Niagara county court. The action was commenced in a justice's court. The defendant put in an answer claiming that the title to real estate would come in question; whereupon the action was discontinued, and commenced in the county court, where it was tried by the court without a jury. Judgment was given for the defendant, and the plaintiff appealed. The facts appear in the opinion.

*G. D. La Mont*, for the appellant.

*Dayton & Murray*, for the respondent.

*By the Court*, MARVIN, P. J. The plaintiff conveyed a strip of land, four rods in width, through his farm, to the Rochester, Lockport and Niagara Falls Railroad Company, in 1851, upon which to construct the railroad of the company. The defendant, as one of the servants of the company, erected fences made of rails, known as a crooked or Virginia fence, so that one half of such fence projected over the line of the four rod strip, and was so built upon the lands of the plaintiff. The projection of every other corner of the fence is from three to three and a half feet over the line, upon the plaintiff, while the intermediate corners project a like distance over the line, upon the land of the railroad company. The question is, was the railroad company a trespasser, in so building the fences? The counsel for the plaintiff made an elaborate and very ingenious argument in support of this proposition. He insisted that the sole object of the statute requiring railroad corporations " to erect and maintain fences upon the sides of their roads" was to protect the track of the road for the safety of the public; and that this provision had no reference to the interests of the adjoining proprietors of land, so far as fencing their premises are concerned; that the corporation may erect their fences along the *side of the track of their road*, upon their own land, and leave the occupant of lands adjoining to protect his own premises by fences erected by himself; and that under no circumstances has the corporation the right

so to erect a fence as that any part of it shall stand upon land outside of the line of the land of the corporation, giving to the term *line* its mathematical definition. It is not necessary in this case to consider whether a railroad corporation may erect its fences upon the side of the track of the road, on its own land, and at some distance from the line ; or whether, if it does so, the adjoining land owner may use the land up to the fence, or may connect his fences, approaching the railroad, to the fence so built by the corporation. Unless the occupant of the adjoining land may do so, he will derive no benefit from the fences erected by railroad corporations upon their own land, at a distance from the mathematical line ; but to protect his own premises, he would be obliged to erect fences entirely upon his own land. The counsel for the plaintiff frankly conceded that the former would have no right to enter upon the land of the corporation outside of their fences, and that he would be obliged to erect fences upon his premises, for their protection.

By the statute, " Every corporation formed under this act shall erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law, with openings, or gates, or bars therein, and farm crossings of the road, for the use of the proprietors of lands adjoining such rail-road." (*Laws of* 1850, *p.* 233, § 44.) By section 49, (*Id.* 235,) § 44, was made applicable to existing railroads. The Rochester, Lockport and Niagara Falls Railroad was bound to erect fences upon the sides of its road. And in my opinion the defendant, acting as the servant of the railroad company, committed no trespass in erecting the fences in question. They were erected upon the *sides of the railroad,* within the meaning and contemplation of the statute. The term road may include all the four rods in width. It is not limited simply to the *track* of the road. The term *side* is used and applied in many ways. Among the definitions given by Webster, are margin, edge, verge, the exterior line of any thing, considered in length ; as the side of a tract of land or field, as distinct from the end. Hence we say, the side of a river ; the side of a road. The fences were built on the sides of the road and upon the " exterior line." It is

true that, in building the fence upon the *exterior line*, owing to the *kind* of fence, it was necessary to project half the corners of the fence over the mathematical line, upon the plaintiff's land ; and the question comes to this, had the corporation a right to erect such a fence ? The statute does not prescribe the kind of fence, except as to its height and strength, by reference to a division fence, as required by law. The law touching division fences does not prescribe the kind of fence that shall be made. Each proprietor of lands adjoining is to make and maintain a just proportion of the division fence, except one of them shall choose to let his land lie open. (1 *R. S.* 353, § 30.) The electors of towns, at their annual town meeting, have power to make rules and regulations for ascertaining the sufficiency of all fences in the town. (1 *R. S.* 340, § 9.) I refer, to these provisions now, simply for the purpose of remarking that the legislature has made laws in reference to fences and *division fences*, without prescribing the kind of fence to be built. I do not claim that these provisions apply to railroads, any further than the general railroad act has made them applicable. But when the legislature speaks of *fences*, and division fences, we must have in our minds some idea of what a fence is. Now I know of no statute authorizing the erection of a crooked or Virginia fence, upon the line, as a division fence between adjoining proprietors ; and yet, probably in this state, ninety-nine one-hundreths of all the *division fences* between adjoining farms are the worm or Virginia fence, leaving half the corners upon the land on one side of the mathematical line, and the other half upon the other side. So that it might be argued that he who built the fence was a trespasser upon his neighbor's land. I am not aware that any action has ever been brought, in this state, for such a trespass. This kind of fence has been built as a division fence, *time out of mind*, and I have no doubt that it has become a part of the common law of the state that adjoining owners of farms may erect such fences as division fences, occupying the necessary quantity of land upon each side of the mathematical line, and that such fence is a fence, in contemplation of law, upon the line between the adjoining farms, and is a fence " on the side of " the farm.

So, in the present case, the fences are erected on the sides of the railroad, and such erection was authorized by the statute. This construction is clearly the most beneficial to the adjoining proprietors of lands. The fence upon the line will be erected for their benefit. It would be very onerous to them if they are obliged to erect and maintain fences upon their land, and cannot avail themselves of the fences erected by the railroad corporations. It would involve an unnecessary expense, &c.

In the *Matter of The Rensselaer and Saratoga Railroad Company,* (4 *Paige,* 553,) the chancellor, in the absence of any statute expressly applicable, held that the railroad and adjoining proprietors should each erect and maintain half the partition fence; and he suggested the propriety of the legislature requiring railroad companies to keep up and maintain the partition fences between the railway and the adjoining lands of other persons. And in my opinion the legislature has adopted the suggestion of the chancellor, and intended that the adjoining land owner should have the benefit of the fence. (*See also Campbell* v. *Mesier,* 4 *John. Ch.* 334.)

The judgment of the county court must be affirmed.

