## The Winona & St. Peter R. R. Co.

### *v.*

### Robert Waldron, and Nancy A. Waldron, his Wife.

In ascertaining the compensation to be allowed to the owner of land, a part of which is taken for a railroad, it is competent to ask a witness what was the

market value per acre of the land taken, at the time when the question of compensation is passed upon by the commissioners. It is competent in such case to ask a witness to state to the jury in what manner is the market value of the farm injured by the road.

If it clearly appears that notwithstanding the admission of testimony which is immaterial, no injury resulted therefrom, the admission of such testimony will not be sufficient ground for a new trial.

In the absence of statutory provision to the contrary, when a railroad passes through improved land, the cost of constructing fences rendered necessary by the road, is a proper element of damages to the owner of the land taken *in invitum*, for the purpose of the road; but when a railroad company, whether as a condition or limitation of its right to take land for its road, or as a police regulation, is required by statute to construct such fences, the damages for taking the land should be assessed upon the basis of the construction of such fences by the company in accordance with the statutory requisition.

The provisions of Sec. 4, Chap. 19, of the laws of 1862, with reference to fencing by the W. & St. P. Railway, are not imposed as a condition or limitation of the company to take the land for the construction of its road, but are a mere police regulation. It was, therefore, entirely competent for the Legislature to alter, amend or repeal it, and the consent of the company was not necessary so far as this question is concerned; for the same reason, Sec. 4, Chap. 10, Laws of 1865, is valid.

Chapter 10 of the laws of 1865 was passed in violation of the State Constitution, and is therefore void. McMillan, J. dissents on this point.

General benefits conferred on the owner of land taken *in invitum* for the railroad, that is, such benefits as result from the construction of the road to property holders generally in the same vicinity, through whose lands the road does *not* pass, cannot be deducted from the compensation due to the owner through whose land the road passes, for his damages; the benefits to be deducted must be those resulting directly to the land, a part of which is taken from the construction of the road, not through the vicinity, but through the land.

In an action by W. against a R. R. Co. for damages for the land taken by the company for the road, the court charged the jury as follows: "Against the market value of the land you will off-set nothing whatever." *Held :* To be erroneous; that under our Constitution, Art. 1, Sec. 13, and Art. 10, Sec. 4, when private property of a citizen is taken for public use by a railroad company, full compensation must be made for the injury, not only for the portion of land taken, but the damages caused by taking it; the damages allowed as a compensation are a unit although composed of integral parts; special benefits to the land by the construction of the road may be deducted from the damages to the owner of such land, and may be recouped from the full amount of such damages

The district court for Olmstead county, upon the petition of the Winona & St. Peter R. R. Co., appointed commissioners to assess the damages for right of way, &c. The commissioners determined and reported the compensation to be paid by the company to the defendants, Waldron and wife. The defendants appealed from the report and award of the commisioners to said district court. The cause was tried in the district court before a jury, who returned a verdict for the defendants, giving them increased compensation.

The plaintiff moved the court for a new trial, upon a case made and settled, "for errors of law and fact appearing upon the record, and on the ground of excessive damages;" which motion was denied by the court, and the plaintiff appeals from the order denying the same to this court. On the trial various exceptions were taken to the rulings of the court upon the admission and rejection of testimony, and to the charge to the jury, which, so far as material, appear in the opinion of the court, and the points presented by the counsel for the respective parties.

Franklin & Keyes, for appellant.

I. The court erred in allowing the witness, Horton, and other witnesses, to testify as to the amount of damages done to Waldron's farm on account of the indefinite use of that part taken, and of the construction and maintenance of one-half of the fences along the line of the railroad, and in allowing said witness to give his opinion as to what particular things injured the market value of the farm.

1. The real question, or rather result to be arrived at in such a case as this is, will the farm, as a whole, be damaged or injured by the doing of the acts proposed? And to ascertain this fact as in other cases, (except in so far as the particular law under which the assessment is had in this case may vary or change the rule,) reference must be had to the market

value of the whole farm before and after the injury complained of is done. The market value before and after, is in all cases of alleged injury to property the true test. To this market value the party calling a witness should be confined in his examination in chief, to ascertain the process by which the witness arrives at his conclusion, and the amount of damages he fixes on account of particular injuries done, and what he considers injurious to the market value is the exclusive province of a cross-examination. The law considers it barely competent for a witness to give his opinion in such case as this in relation to the market value of the property before and after the injury. This we understand to be the utmost limit on this subject to which a party calling a witness may go. If the rule for the examination of witnesses in chief, adopted by the court below in this case, is the correct rule, we fail to see that a cross-examination has any province whatever.

The court erred in allowing the respondents to prove by their witnesses, "that during some portions of the year, Waldron hauls his wheat and produce out to market, and his lumber and heavy articles back by a route which crosses this railroad track in his field on this farm, and that by the construction of the railroad the occupant of this farm is inconvenienced, and the market value thereby affected."

1. This is purely speculative, contingent and immaterial matter. This matter of inconvenience in crossing the railroad track in going to and returning from market, if it be one, is only such as every one visiting a market place where there is a railroad, is subjected to. It furnishes no certain data upon which to predicate damages. It is wholly intangible. If it be an inconvenience or damage, it is such as does not set the law in motion. It is *damnum absque injuria.*

The court erred in allowing the witness, Horton, and other witnesses, to testify as to any additional fences that might be made necessary by the construction of the railroad, and the cost of building the same, as an item of damages allowable to

the appellants, and in refusing to charge the jury that they were not entitled to such allowance.

1. By Sec. 4 of Chap. 10 Special Laws of 1865, it is provided that "section four of Chapter nineteen of the Special Laws of 1862, being an act to facilitate the construction of a railroad from Winona, westerly by way of St. Peter, be amended so as to read as follows: Said company, or any railroad company formed by any consolidation with the Winona & St. Peter Railroad Company, shall construct and maintain a good ánd legal fence on both sides of their road, wherever it may run through enclosed lands, within two years after the commencement of the operation of their road across said lands, and during said period of two years shall construct and maintain good and sufficient cattle guards at points of crossing such lands, and shall also construct all necessary farm crossings over the track of their road."

If this statute is a valid act and binding upon the company, and applicable to this case, there would seem to be no doubt that the subject of fencing could not be properly taken into the account in assessing the damages. That the Legislature intended to make it applicable to the Winona & St. Peter Railroad Company from the time of its passage, we think there can be no doubt, since it not only refers to that company in terms, but is an amendment of Sec. 4, of Chap. 19, of the Special Laws of 1862, which is the act under which said company acquires all its rights, and the section amended is the one in said act relating to the subject of fencing.

2. The fact that this statute was passed after these proceedings were commenced, can make no difference. No vested rights had been acquired under them by either party at the time of its passage, and so neither could insist that the law as it was at the commencement of the proceedings, should remain unchanged. The rights of the parties in this respect were and are wholly dependent upon statutory provisions, and it was competent for the Legislature to change them at any

time before they had become definitely fixed by a final judgment.

3. It was not necessary that an actual acceptance of the provisions of the act by the company, should be shown in order that it may avail itself of its provisions. The act by its terms does not require any formal acceptance as a condition precedent to the enjoyment of the rights conferred, and as the act is beneficial, its acceptance is presumed. *Bank of U. S. v. Dandridge*, 12 Wheat. 70 ; *Chas. River Bridge v. Warren Bridge*, 7 Pick. 344, Parker, C. J., and Wilde, J.

4. But its acceptance, in so far at least as this provision relating to fencing is concerned, is not at all essential to its binding force upon the company. The power of the Legislature to control railroad companies in this respect, is found in the general control over the police of the country, which resides in the law making power. Redfield on R. R. 554, note.

5. This statute is not in conflict with the requirements of Sec. 27, of. Art. 4, of the Constitution, which provides that no law shall embrace more than one subject, which shall be expressed in its title.

The design of the constitutional provision is to prevent the uniting of various objects, having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in support of the whole, which could not be combined in favor of either by itself, and the provision should be so construed as to meet this mischief alone. Sedgwick on Statutory and Constitutional Law, 51, 53 and 567, and cases there cited; *Murphy v. Menard*, 11 Texas, 673 ; *The Board of Supervisors of Ramsey County v. Heenan*, 2 Minn. 336 ; *Tuttle v. Strout*, 7 Minn. 468.

The title of the act in question is "An act to authorize the Winona and St. Peter Railway Company to consolidate with the Minnesota Central Railroad Company, and to bridge the Mississippi river."

The subject of the act is the Winona and St. Peter Railroad Company, an increase of its powers; anything therefore relating to that company might properly and legitimately be embraced within the act, without having each particular matter so relating specially mentioned in its title.

IV.  The court erred in refusing to allow the railroad company to give evidence of the increased market value of Waldron's farm per acre, due solely to the influence of the construction of its road, with a view of offsetting the same against the damages sustained, and in charging the jury "that any general benefits arising from the construction or operation of the railroad shared by the defendants in common with the whole country in this vicinity, and not peculiar to them or to other lands actually crossed by the road, you will exclude and not consider in ascertaining these damages.  As for instance, such benefits as defendants would receive if the railroad should be constructed through the country, but not crossing this farm."

1st.  The company's charter provides the manner in "which compensation shall be ascertained and determined," and declares that "in estimating damages or compensations to be paid to any claimants to lands or interests in lands so proposed to be taken, the said commissioners shall take into consideration the benefits to accrue to the claimant by the construction of said railroad, and allow such benefits by way of recoupment against the damages which such claimant may sustain thereby, and report only the balance of damages which shall remain after applying such benefits in recoupment thereof, but no balance shall be in any case reported in favor of the company."  Sec. 5, Ch. 27, Laws of 1855.

2d.  The intention of the Legislature in the adoption of this provision was manifestly to relieve the company from the payment of damages to the owner of a tract of land for the privilege of constructing its railroad through it, when the additional value to be given to the land by its construction, was

fully equal to the injury which it would occasion. And since
the language of the statute is general, it was never intended
to be so construed as to make it at all material whether the
additional value given to the land by its construction arises
from draining the land which was before wet, from affording
additional facilities for taking its produce to market, or from
the general enhancement in the value of the land occasioned
by its contiguity to the public work. *The Alton & Sangamon
Railroad Co. v. Carpenter*, 14 Ill. 190; *Rexford v. Knight*,
15 Barb. 627; *McMasters v. Commonwealth*, 3 Watts, 294;
*Commonwealth v. Coombs*, 2 Mass. 491; *Commonwealth v.
Session of Norfolk*, 5 Mass. 436; *Commonwealth v. Session of*
Middlesex, 9 Mass. 388; *Betts v. The City of Williamsburgh*,
15 Barb. 258; *Livingston v. Mayor of New York*, 8 Wend.
85; *Dwight et al. v. Commissioners of Hampden*, 11 Cush. 201;
*Pennsylvania Railroad v. Heister, McClure & Reiley*, 8 Barr,
445; *Levermore v. Town of Jamaica*, 23 Vt. (8 Washt.) 361;
*Matter of Furman street*, 17 Wend. 650, 670; *Matter of Wil-
liams and Anthony streets*, 19 Wend. 690; *Troy & Boston
Railroad Co. v. Lee*, 13 Barb. 169; *Niagara Falls Railroad
v. Payne*, 16 Barb. 273; Smith's Com. on Statutory and Consti-
tutional Construction, 469 *et seq.*; *McIntire v. The State*, 5
Blackf. 384; *The State v. Digby*, 5 Blackf. 543; *Indiana Central
Railroad Co. v. Hunter*, 8 Ind. 74.

3d. The benefit to or enhanced value of the land contended
for is not too uncertain, remote or contingent to be estimated;
like almost all questions of damage or benefit it is based upon
knowledge derived from experience. Every man at all famil-
iar with the matter, knows that the construction of railroads
through a country enhances the market value of lands, and
when acquainted with their location and situation in reference
to the road, can tell with certainty the amount per acre. The
knowledge of damages in this and all similar cases, in like
manner as that of benefits, is derived from experience, and
the one is no more uncertain or contingent than the other.

This principle is fully recognized in the cases last cited.

4th.   There is no force in the objection that benefits accruing to the claimant in the enhanced value of his land, a part of which is taken, by reason of the construction of the road, prior to the time when the commissioners assessed the damages, cannot be considered in estimating the benefits.   The law requires that the benefits accruing to the claimant by reason of the construction of the road, shall be offset against the damages sustained, without reference to the time when they accrued, and there is no principle upon which this right can be said to be lost by reason of delay.   It is wholly immaterial at what time the assessment is had, or to what time the assessment of both damages and benefits is referred.   They can certainly be judged of with quite as much accuracy after the effects are actually produced as before.   Ch. 27, Laws of 1855, Sec. 5.

V.   The court erred in charging the jury that "if the farm would sell for as much, as it now is with the road constructed through it, less the value of the land actually taken, as it would bring if the road ran through the country but not crossing this farm, then defendants have sustained no damage whatever.   If it will not, then that reduction in the market value of the lands not taken, is the measure of defendant's damages."

This is simply saying to the jury, the enhanced value of the farm due to the construction of the road, you will assess in favor of the claimant and against the company, as damages; that the company shall pay the claimant the enhanced value of his farm which is due to the construction of its road.   In other words, giving to the claimant that which the law says shall be given to the company.   If the charter had merely said that the enhanced value of the land due to the construction of the road, shall not be assessed in favor of either party, even then this part of the charge could not fail to be regarded as erroneous.

VI.   The court erred in charging the jury, that nothing whatever is to be offset by the jury against the market value of the land actually taken.

1st.   Private property can only be taken for public use, and when taken, can only be held for that purpose.   It in fact belongs to the public.   *Embury v. Connor*, 3 Comst. 511.

So that in the principles which govern the whole subject, it can make no difference whether the compensation is to be paid out of the public treasury or that of a corporation.

2d.   The charter of the company was granted by the Legislative Assembly of the Territory of Minnesota, under the Federal Constitution, (Chap. 27, Laws of 1855,) and that provision of the charter requiring the benefits accruing to the claimant from the construction of the road, to be offset against the damages or compensation to be paid to the claimant for his interest in the land taken, is not in conflict with its provisions.   *Rexford v. Knight*, 15 Barb. 627.   See also, cases cited under point IV, Subdiv. 2.

3d.   By the terms of the charter the company only acquire an easement in the land taken.   Laws 1855, Chap. 27, Sec. 445.

4th.   The rights of the respondents to, and authority and control over the lands upon which the easement is imposed, are unimpared as against all persons except the company, and it cannot use it for any purpose inconsistent with the enjoyment of the easement acquired.   *Barclay v. Howell's Lessee*, 6 Pet. 498; In the matter of John and Cherry streets in the city of New York, 19 Wend. 665–66; 3 Kent's Com. 432–33, and cases cited.

5th.   The respondents remain the owners of the soil, and have a right to all ordinary remedies for the freehold.   They may maintain an action of ejectment for encroachments upon it, or an assize if disseized of it, or tresspass against any person who digs up the soil or cuts down any trees growing upon it. The freehold and profits belong to them, and they have every

use and remedy that is consistent with the servitude or ease-
ment of the company over it.

The whole question in this respect is, therefore, one of dam-
ages.

The order of the court below should be set aside and a new
trial granted.

E. A. McMahon and Charles C. Willson, for respondents.

I. The first exception taken by the counsel for the R. R.
Co. is to the decision of the court overruling their objection
to the question, What was the market value per acre of re-
spondents' land taken by the R. R. Co. the fore part of Jan-
uary, 1865 ? Respondent supposes it is now settled by this
court that it is proper to enquire what is the value of the strip
of land taken. *W. & St. P. R. R. Co. v. Denman*, 10 Minn.
R. 267.

The second exception is to the effect that the witness should
not state in what manner the market value of the farm is
injured by the road, as such testimony would be the expression
of the witness' opinion, instead of the facts.

The answer of the witness follows, and if any opinions of
his are to be found in the answer prejudicial to the R. R. Co.,
we fail to see them. He simply describes the creek and shape
of the land, and the manner the track cuts across the prem-
ises.

The third exception is to the ruling of the court permitting
Waldron to show that the market value of the farm was di-
minished by the building of the R. R. across his way out to
market.

That the way out to market leads across the R. R. track,
and that the fact would ordinarily have its effect upon the value
of the farm when offered for sale, should certainly be known to
the jury about to assess the damages. Under the light of the
judge's charge we cannot see wherein the R. R. Co. were
prejudiced by the evidence admitted.

The fourth exception and the two following relate to the subject of fences. Waldron proposed to show it to be necessary to fence the R. R. to enjoy the use of his land, the cost of building the fence, and the expense of maintaining it in repair. We understand this court has held that the expense of building and maintaining additional fences, rendered necessary by the construction of the road, is a proper element of damage. 10 Minn. R. 267.

Unless Chap. X of Special Laws of 1865, p. 48, is a constitutional and valid law, binding upon the R. R. Co., without being accepted by them, the rule established by this court remains unchanged. If this act is constitutional, still there would be damage to the value of the farm. For two years it could not be used or tilled without great inconvenience. See point III, below.

The next exceptions are to the decision of the court overruling the objections to the two questions intended to show the market value of the farm before and after the construction of the railroad—the difference being the damage. The railroad was built from Winona to Rochester in October, 1864; this land is situated four miles west of Rochester, and had, undoubtedly, been favorably influenced in market value by the road reaching Rochester. The Commissioners sat in December, 1864, and fore part of January, 1865. The objection that the influence of the construction of the road to Rochester upon the value of the farm, would necessarily be included in the answer to the first question, and the difference in value of the farm, with and without the railroad, thereby increased.

One answer to all this is, that the railroad company chose their own time for assessing damages, and ought not now to complain. 10 Minn. R. 283.

Another answer will be found under the point below, regarding general benefits.

The exception to the ruling of the court, excluding the comparison of prices in 1864 with *ordinary times*, appears to us trivial. What are ordinary times? The witness on his direct examination, has spoken of the cost of building fence generally, with regard rather to the date of his testifying than at any other time. He placed the cost of the fence at nearly the same price that the witness for the railroad company did, and we fail to see wherein any injury has resulted to the appellant.

The exceptions involving the question of general benefits are discussed below, and need not be separately considered here.

II. Any general benefits arising from the anticipated operation of the railroad (and not the result of the mere construction or building of the road, as drainage and the like—properly denominated special benefits,) are too remote, too vague and uncertain to be the subject of legal admeasurement and offset.

The act of 1855, page 87, provides that "in estimating damages, the commissioners shall take into consideration the benefits to accrue to the claimant by the construction of the said railroad, and allow such benefits by way of recoupment against the damages which such claimant may sustain."

The act further provides, upon appeal to the District Court, that the appeal "shall be entered, proceeded in and determined, in the same manner as cases on appeal from the courts of Justices of the Peace, and in case the appeal involves any question of fact, the same shall be tried by a jury."

This language does not purport to change the law of evidence, the benefits spoken of are presumed to be such only as the law recognizes in the ordinary administration of justice. They are such benefits as arise from the construction (viz: building) of the road, not from its operation and business after it is completed. This rule is applied to the commissioners only; on the trial of the appeal before a jury, this rule is not

required to be observed, but the trial in the District Court is left to the ordinary rules of the common law.

The act is in derogation of the natural rights of citizens, and is to be most strictly construed. *Robbins v. M. & H. R. R.* 6 Wis. R. 636; *M. & M. R. R. v. Eble,* 4 Chand. 84, 88; *Resp. Brief in W. & St. P. R. R. v. Denman,* 10 Minn. R. 276, and the cases cited in these reports.

Minnesota State Constitution, article 1, section 13, provides that compensation shall be first paid or secured before land shall be taken. How is this requirement fulfilled by the hope of benefits arising from operating the railroad after it is completed? *Power v. Bears,* 12 Wis. R. 213.

For a proper understanding of the Massachusetts cases, first see Mass. Gen. Stat. p. 352, Sec. 21, and p. 234, Sec. 16; 4 Cush. 291; 5 Allen, 133; 8 Cush. 600; 3 Allen, 136, 140; Redfield on R. R. Sec. 71, p. 135 to 139, and the cases cited in the notes.

It is believed by us that the almost uniform tendency of the latest cases is to exclude both benefits and damages which are remote and speculative, as well in railroad cases as in suits arising out of the ordinary transactions of life.

The extreme desire for great public improvements in earlier times is really the true origin of the different rule. 7 Ind. R. 711, 8 Black. R. 246.

The New York cases cited by the appellant relate to streets and taxation, and are sustainable under the principles enunciated in *The People v. Mayor, etc., of Brooklyn,* 4 Coms. 419. They are not applicable to this case, or in this State, under our State Constitution, article 9, section 1. *Stinson v. Smith,* 8 Minn. 366.

III. The act of March 4, 1865, Chapter 10, Special Laws 1865, page 48, is unconstitutional and void, without the acceptance thereof by the railroad companies.

1. It embraces more than one subject, viz : Consolidation ; Bridging the Mississippi ; Taxation. Minn. State Const. Art. IV, Sec. 27 ; *The Board, etc., v. Heenan*, 2 Minn. R. 330.

2. The act purports to alter and disturb the vested rights of two corporations, and alter their charters, which are contracts with the State, and amount only to a proffer from the State of a new contract with them, which they could accept or refuse.

The corporations declined to accept the offer, and the whole act became nugatory.

They cannot accept a part without accepting the whole. The offer by the State is one and indivisible, and to be accepted or rejected by the companies as such, and not in parcels. *Dartmouth College v. Woodward*, 4 Wheat. U. S. R. 518.

3. This case arose, was tried before the commissioners, and appealed to the District Court, before the act in question was enacted, and the decision in this case fixes the rights of the parties as of the date of the filing of the report of the commissioners. The only mode of bringing in the act of March 4th, 1865, would have been by bill, in the nature of a supplemental complaint.

*By the Court*—McMillan, J.—This is a proceeding under sections 4 and 5, of chapter 27, of the Sess. Laws of 1865, to assess the damages sustained by the respondents—the owners of certain lands—by reason of the construction of the appellant's road through their premises.

An appeal from the report of the commissioners was taken by the respondents here, to the District Court, and the cause tried and damages assessed for the respondents ; whereupon the appellants moved for a new trial, which was denied. From the order denying this motion, this appeal is taken. Several exceptions to the rulings of the court on the admissi-

bility of testimony, and to the instructions of the court to the jury, were taken, which we proceed to dispose of.

Hiram T. Horton, a witness for the respondents, having been sworn, in the course of his examination, was asked by the respondents, "What was the market value per acre of the respondents' land taken by the railroad company in the forepart of January, 1865," which was objected to by the appellant: 1st, That it is a cross-examination of the parties' own witness; 2d, The correct rule for ascertaining the damages, if any, in such a case as this, is to ascertain the market value per acre of the whole farm, a part of which is taken, without the construction of the railroad, and then with it, and the party, on the direct examination of his witness, should be confined to such rule, and not be permitted to examine as to the amount of damages occasioned by particular matters separately, as upon cross-examination. The objections were overruled, and the appellant excepted. We see no error in this ruling. The same point was fully considered and determined in *Winona & St. P. R. R. Co. v. Denman*, 10 Minn. 267. The witness was further asked to "state to the jury in what manner the road runs through the land, and in what manner is the market value of the farm injured by the road." The latter part of the question was objected to by the appellant, on the ground that it asks for the opinion of the witness as to what affects the market value of the farm, instead of the facts. The court overruled the objection, and appellant excepted. We think the question was proper. The market value of the farm is the standard by which the injury to the farm is determined, and is here used as synonymous with the farm. The manner in which the road runs through the farm, evidently embraces the course and character of the track of the road with reference to this land, and the portion of the question objected to, we think, calls upon the witness to state in what manner—that is, by reason of what facts or circumstances, in his opinion, this injures the value of the farm; or, in other

words, how does this road render the farm less valuable, and the witness so understood it, and states purely matters of fact in reply. *Dwight and others v. Co. Com'rs. of Hampden*, 11 Cush. 204. The respondents then proposed to prove by this witness that, during some portions of the year, Waldron hauls his wheat and produce out to market, and his lumber and heavy articles back, by a route which crosses the appellant's railroad track in his field on this farm, and that, by the construction of the railroad, the occupant of the farm is inconvenienced, and the market value thereby affected; which was objected to on various grounds. The court sustained the objections, so far as the number and location of the crossings are concerned, but overruled the objections, so far as crossing the track in going to and returning from market is concerned, to which the appellant excepted, and the witness answered: "So far as I know, he has been in the habit of crossing the railroad, and coming north with grain to market; comes the north road because it is best; there is a marsh on the other road."

The court, however, at the appellant's request, charged the jury that the respondents are in no event entitled to recover any amount as damages against the appellant for mere inconvenience in crossing the track of the railroad in going to, or returning from, the respective sides of their farm divided by the same, and further charged, "You must not consider any inconvenience from  *  *  *  crossing the track."

If it clearly appears that, notwithstanding the admission of testimony which is immaterial, no injury resulted therefrom, the admission of such testimony will not be a sufficient ground for a new trial. In view of the instruction of the court to the jury, which we have noticed, we think no injury resulted to the appellant from the testimony referred to, and we do not feel called upon to disturb the verdict for this reason.

The third point raised by the appellant is of a more serious character. The court allowed the witness Horton, and other

witnesses, to testify as to additional fences made necessary by the ·construction of the railroad, and the cost of building and maintaining the same, as an item of damages to the respondents, which was regularly excepted to by the appellant. The appellant also requested the court to charge the jury "that, by reason of the special law passed by the Legislature of this State in 1865 (Ch. 10, Sec. 4, Sp: Laws 1865) which has been put in evidence, by which the appellant is required to fence on both sides of its road, within two years after the same is constructed through enclosed lands, no damages should be allowed the respondents in this case on account of such fences," which the court refused, and the appellant excepted. The court also charged the jury as follows : "Fencing is a proper subject for your consideration, in so far as it affects the market value of the farm."

It is manifest from the whole case that the question of damages on account of fencing entered into the consideration of the jury, and materially affected their finding. It is evident, also, that the damages were assessed with reference to the rights and obligations of the parties as they existed, independent of section 4, of chapter 10, of the Special Laws of 1865, which provides, that "section 4, of chapter 19, of the Special Laws of 1862, being an act to facilitate the construction of a railroad from Winona westerly by way of St. Peter, be amended so as to read as follows : "Said company, or any railroad company, formed by any consolidation with the Winona and St. Peter Railroad Company, shall construct and maintain a good and legal fence on both sides of their road wherever it may run through enclosed lands, within two years after the commencement of the operation of their road across said lands, and during said period of two years, shall construct and maintain good and sufficient cattle guards at points of crossing such lands, and shall also construct all necessary farm crossings over the track of their road." This section, it is manifest, materially changes the obligations of the railroad company

as to building fences, and, if it is applicable to this case, must establish a rule of damages as to the matter of fencing, essentially different from that which was adopted on the trial of the cause, and governed the jury in their finding. The validity of the act, and its applicability to this case, are denied by the respondents. There are two distinct views of the rights and obligations of the railroad company with reference to the owners of improved land through which the road passes, which are to be distinguished: one is the liability of the railroad company with reference to the question of compensation to the owner for damages in taking the land for the road; the other to the liability of the parties to each other for injuries to cattle, or live stock, etc., upon the road. The first is the only question for us to consider here. We think it should admit of no doubt that, in the absence, at least, of different statutory legislation, where a railroad company passes through improved land, the cost of constructing additional fencing, rendered necessary by the road, is a proper element of damage to the owner of land taken, *in invitum*, for the purpose of the road. *W. & St. P. R. R. Co. v. Denman*, 10 Minn. 267; *Morse v. Bos. & Maine Railway*, 2 Cush, 536; *Quincy v. Vt. C. R. R. Co.*, 23 Vt. 387, (see 4 Paige 553) *Pet. of Mt. Wash. R. R. Co.*, 35 N. H. 145; *Comm. v. Bos. & Maine R. R. Co.*, 3 Cush. 25; (See 14 Gray 162.)

But when the railroad company, whether as a condition or limitation of its right to take land for its road, or as a police regulation, is required by statute to construct such fences, the damages for taking the land should be assessed upon the basis of the construction of such fences by the company, in accordance with the statutory requisition. The original charter of the company in this instance, which provides the manner in which lands may be taken, and the mode of compensation, is silent on the subject of fencing. Sec. 4, Ch. 19, of the Laws of 1862, is an independent provision, and has no connection with the taking of lands, or the damages to be assessed there-

for. Sec. 4, of Ch. 10, of Sp. Laws of 1865, is of the same character, and is an amendment of and substitute for Sec. 4, of the Laws of 1862. If it were admitted, therefore, that the terms prescribed in the charter with reference to the mode and condition of taking lands, and assessing damages, were in their nature vested rights, and therefore not capable of being changed without the consent of the company, it would not affect this question, since fencing is not embraced within these terms, and is not by the terms of the charter a condition or limitation of the company to take the land for the construction of the road. That the charter of a private corporation is a contract there is no doubt, and that in the absence of express limitation or restriction, the corporation takes the franchises with all reasonable and necessary incidents to accomplish the object of its existence granted by the charter as vested rights will not be doubted; but that the Legislature may control and regulate the action of these artificial beings in the exercise of their rights just as a natural person may be controlled and regulated, is as well settled. These rights of the individual citizen are the object of protection by the Government, but they are qualified by his relation to the public, and must not be exercised to the public injury. Whatever regulation therefore of individual rights is necessary to be prescribed for the public welfare is not only within the power of the Legislature, but is incumbent on it to enact. This principle constitutes the police power of the State. To this source the right of the Legislature to impose upon existing railroad corporations the duty of fencing their roads, making cattle guards, regulating the speed of their cars, the use of signals, &c., is traced, and on this principle it is sustained. *Ohio & Miss. R. R. Co. v. McClelland*, 25 Ill. 140; *Galena & C. R. R. Co. v. Loomis*, 13 Ind. 548; *Nichols v. T. & R. R. R. Co.*, 43 Maine, 356; Redfield on Railways, p. 549, 554, and note and authorities cited. If the Legislature can deprive itself of this power in any instance, it certainly can only be done by

express grant, and not by implication. *Providence Bank v. Billings et al.*, 4 Peters, 514. This cannot be claimed in this instance, for the right to amend, saving only vested rights, is expressly in the original charter. Laws 1855. The section of the act of 1862, relative to fencing, therefore, was a mere police regulation, and the company, so far as the act itself is concerned, had no vested rights thereunder. Sp. Laws 1862, Ch. 19, Sec. 4. It was, therefore, entirely competent for the Legislature to alter, amend or repeal it, and the consent of the company was not necessary. It follows that the act of 1865, so far as this question is concerned, is valid for the same reason. Sess. Laws 1865, Ch. 10, Sec. 4, p. 48.

But it is further urged that the act of 1865 is in conflict with Sec. 27 of Art. 4 of the constitution. The article is as follows: "No law shall embrace more than one subject, which shall be expressed in its title." The majority of the court are of opinion that this objection to the law must be sustained. My own opinion is that the law comes within the principle laid down by the Supreme Court of this State in *Tuttle v. Strout*, 7 Minn. 465, and is valid. See also, *Board of Supervisors of Ramsey County v. Heenan*, 2 Minn. 330.

There are two other questions which embrace the substance of the remaining points of the appellant: 1. Are general benefits conferred on the owner of the land taken, that is, such benefits as result from the construction of the road to property holders generally in the same vicinity through whose land the road does not pass, to be deducted from the compensation due to the owner through whose land the road passes for his damages? 2. Can special benefits accruing to the owner of the land taken, that is, local, incidental benefits resulting to the premises (a part of which is taken,) directly from the construction of the road, be deducted from the value of that portion of the land actually taken for the road, or must they be recouped, if at all, from the damages resulting to the

remaining portion of the premises, by reason of the taking of the land for the construction of the road?

There is great conflict in the decisions of the courts of the the different States of our country upon these questions. It is useless to attempt to lay down any one rule as settled by uniform authority, or perhaps by a decided weight of authority. We are compelled, in establishing a rule for our own State, to adopt that, which in view of the important results to public improvements and to private rights, seems most in accordance with settled principles of law in analogous cases.

The charter of the railroad company in this case provides the manner in which compensation for lands taken for the road shall be ascertained and determined. "In estimating damages or compensation to be paid to any claimant to lands, or interest in lands so proposed to be taken, the said commissioners shall take into consideration the benefits to accrue to the claimant by the construction of said railroad, and allow such benefits by way of recoupment against the damages which such claimant may sustain thereby, and report only the balance of damages which shall remain after applying such benefits in recoupment thereof, but no balance shall be in any case reported in favor of the company." This language does not aid us in determining what elements are to constitute the damages for which compensation is to be allowed, or the benefits which are to be recouped therefrom, but leaves these questions to be determined by other principles of law.

The court charged the jury "that any general benefits arising from the construction or operation of the railroad, shared by the defendants in common with the whole country in this vicinity, and not peculiar to them, or to other lands actually crossed by the road, you will exclude, and not consider in ascertaining their damages; as for instance, such benefits as defendants would receive if the railroad should be constructed through the country, but not crossing this farm." The court also charged the jury that "if the farm would sell for as much, as

it now is, with the road constructed through it, *less the value* of the land actually taken, as it would bring if the road ran through the country but not crossing this farm, then defendants have sustained no damage whatever. If it will not, then that reduction in the market value of the lands not taken is the measure of defendants' damages." To these instructions to the jury the appellant excepted. We think this charge was correct. The benefits which result to the country generally, or to particular communities, by reason of the construction and operation of railroads, and other internal improvements prosecuted by private enterprise, although for public use, are to be shared equally by the citizens affected by them. The railroad company, the appellant, is a private corporation, and possesses only the rights conferred by the statute. The State has granted to it important and valuable rights and franchises, among them a corporate existence, the right to take, *in invitum*, the land of the private citizen for the construction and operation of a railroad, and the right to take fare, freight and tolls for carrying passengers and merchandise. In the consideration of these and other privileges, the company contracts to build and operate the road in accordance with the terms of the act. The charter gives it no right to assess upon lands benefitted by the road through which it does *not* pass, any sum to aid in the construction, pay damages or otherwise; and whatever may be the case when a public improvement is prosecuted *by the public*, in this instance no such right exists. It would scarcely be claimed by the appellant here that it could maintain an action against a land holder through whose land the road does not pass to recover any sum for general benefits accruing to him from the construction of the road. This principle being established, it follows that if benefits of this character are to be recouped from damages suffered by the owner of the land through which the road passes, the operation of the law must be very unequal and unjust.

These allowances will fall upon but a small portion of those receiving benefits, and that portion those whose lands have been taken and injured without their consent; thus requiring them to bear the whole public burden, and at the same time denying to them advantages conferred upon others. Such construction of the charter would be unreasonable; the benefits to be deducted must be those resulting directly to the land, a part of which is taken, from the construction of the road, not through the vicinity, but through the land. *Meacham v. Fitchburg R. R. Co.*, 4 Cush. 295; *Proprietors of Locks & C. et al. v. N. & L. R. Corp.* 10 Cush. 388, 392; *Dwight et al. v. Co. Comrs. Hampden*, 11 Cush. 204; *Davis et al. v. C. R. R. Co.*, Ib. 509; *Pet. of Mt. Wash. R. Co.*, 35 N. H. 147; *The State v. Miller*, 3 Zabr. 385; Red. on Railways, 134; *Palmer Co. v. Ferrill*, 17 Pick. 63, 66.

The court also charged the jury as follows: "against this market value of the land actually taken, you will offset nothing whatever;" to which the appellant excepted.  There seems to be a distinction made here between the value of the land taken for the road and the injury done to the remaining land by taking it.  It would seem to be implied by the charge, and conceded by the respondents, that special benefits to the remainder of the land may be recouped from the damages thereto incurred by the owner, as distinguished from the value of the land actually taken for the road; and such seems to be the position of the authorities, which hold that the value of the land taken must be paid in money. *Robbins v. M. & H. R. R. Co.*, 6 Wis. 641–2. I am unable to see a ground for any such distinction. It seems to me the right to compensation for both elements of damage is found in the same source, the fundamental right of the citizen to just compensation when his private property is taken for public use. The compensation is for the taking and its proximate consequences; otherwise it leaves the right of the citizen to redress for these *consequences* at the option of the Legislature, to which I do not

assent. To take land of the citizen for public use by the State when necessary, is an essential incident to sovereignty. The right of *eminent domain* is not conferred by the constitution; but, if affected at all, is limited thereby, and only to the extent of the limitation can the citizen obtain any redress. If, therefore, the limitation extends only to requiring compensation for the *land* taken, any other injury being done under the power of *eminent domain*, and in pursuance of statute, must be *damnum absque injuria*, and the citizen has no redress. This would take from the principle contained in the constitutional provision half its virtue, and in many, if not in most cases, render the citizen comparatively without remedy. For in this day we know that, in many cases, the value of the strip of land actually taken for a railroad, is but a small portion of the actual damage to the owner by the construction of the road through his land. Nor can I discover that the nature of the injury is more aggravated, or the right infringed more sacred, in one case than the other. In one instance the possession of a small part of a tract of land may be taken, and in the other the whole tract or parcel may be rendered comparatively useless or valueless. The constitution should receive no such narrow and technical construction. It was intended to declare a fundamental principle of government, that when the public exigency requires the government to take for public use the property of the citizen, full compensation shall be made for the injury; not only the value of the portion of land taken, but the damages caused by taking it. Const. Art. 1 Sec. 13; Ib. Art. 10, Sec. 4; *Pet. of Mt. Wash. R. Co.*, 35 N. H. 146. If this view is correct, then the damages are a unit, although composed of integral parts, and if benefits are to be deducted at all, they must be deducted from the aggregate sum; and it would seem but just and equitable that if the same act at the same time inflicts injury and confers benefits, the one should be set off against the other in determining the compensation due for the injury; then a just and full compensation is ascer-

tained, and thus ascertained, must be paid in money.   In some
of the States a different rule is prescribed by the constitution,
as in the present Constitution of Ohio, Art. 1, Sec. 19; Art. 13,
Sec. 5.   *Giesy v. C. W. & Z. R. R. Co.*, 4 Ohio St. Rep. 309.
But see *L. M. R. R. Co. v. Collet et al.*, 6 Ohio St. Rep. 182;
and the Constitution of Vermont, Secs. 2, 9, Bill of Rights.
The decided weight of authority in our country we think sus-
tains this conclusion, whatever may be the reasoning by which
it is arrived at.   *Symunds v. Cincinnati*, 14 Ohio Rep. 147;
*Kramer v. C. & P. R. R. Co.*, 5 Ohio St. Rep. 140; *McMas-
ters v. The Com.*, 3 Watts, 294; *R. R. Co. v. Heister*, 8 Penn.
St. Rep. (Barr) 450; *Livingston v. Mayor of N. Y.*, 8 Wend.
85; *Mecham v. Fitchburg R. R. Co.*, 4 Cush. 297, 8; *Dwight
et al. v. Co. Com's of Hampden*, 11 Cush. 204; *Davis et al. v.
C. River Br. R. Co.*, Ib. 509; *Palmer Co. v. Ferrill*, 17 Pick.
64; *McIntire v. The State*, 5 Blackf. 384; *The State v. Digby*,
Ib. 543; *Ind. C. R. R. Co. v. Hunter*, 8 Ind. 78; *The Alton
& S. R. R. Co. v. Carpenter*, 14 Ill. 190.   This portion of the
charge, therefore, we think was erroneous.   The third, fourth,
and fifth grounds, urged in support of the appellant's sixth
point, have been considered and determined by this court,
in the case of the *Winona & St. P. R. R. Co. v. Denman et
al.* 10 Minn. 283.   It is there said, "whether the Legislature
were of the opinion that the company should be allowed to
take the fee or an easement, the provision requires compensa-
tion for the interest or estate of those interested in the land,
without reference to the quantity or quality of such interest
or estate, and it may be suggested that even if the company
could take only an easement, what would be left to the land
owner consistent with the enjoyment of the easement by a
railroad company, and even his reversion would ordinarily be
of inconsiderable or no appreciable value, and the Legislature
might with perfect fairness provide for compensation for the
whole interest or estate of those claiming any rights to the

lands." In this we entirely concur, and see no error in the views expressed upon this subject by the court below.

The order denying the motion for a new trial should be reversed, and a new trial granted.

Wilson, Ch. J.—Dissenting. A question arises in this case, whether the owner of land taken by a railroad company is entitled, in all cases, to compensation therefor in money. My associates concur in answering this question in the negative, holding that against the cash value of the land, special benefits occasioned by the construction of the road to the remainder of the same tract, may be set off. From this view I dissent. As it is not material on principle whether the benefits set off are less than the value of the land taken, we will, for the purpose of illustration, suppose that the land of the respondents was worth $500, and the special benefits to the residue of their tract were estimated at an equal or greater sum, and that the taking of the land caused no incidental damage to the remainder still owned by the respondents. Under such circumstances, according to the view of the majority of the court, the respondents would be entitled to no farther compensation from the company, the "benefits" conferred being considered compensation for the land taken.

If this conclusion can be sustained, it must, I think, be on one of three grounds: 1. That the land thus appropriated is not "taken" within the meaning of the constitution. 2. That Waldron has been paid or compensated in benefits, or 3. That the constitution does not guarantee compensation for the *land* taken, but for the injury caused by the taking, after deducting the special benefits to the remainder of the same tract. Whether a perpetual easement or the fee is taken, it is not necessary to discuss; the entire, perpetual and exclusive use of the land for the purposes of the road is taken, and it is too clear to admit of doubt that this estate or interest in the land is "property," protected by the constitution. Whether

payment or compensation can either wholly or in part be made for this property in "benefits," is a question on which I differ from my brethren. I am inclined to think that the language of the charter does not justify the position of the majority of the court on this point, but I shall only at this time discuss the constitutional question. Sec. 13, Art. 1, of our State Constitution, provides that "private property shall not be taken for public use without just compensation therefor first paid or secured." Sec. 4, Art. 10, reads, "Lands may be taken for public way for the purpose of granting to any corporation the franchise of way for public use. In all cases, however, a fair and equitable compensation shall be paid for such land, and the damages arising from the taking of the same." The words of a contract, statute or constitution should be interpreted according to their ordinary acceptation, and in view of the customs and laws of the country.

In England, in the 11th century, a law, in the langugage of our constitution, would have authorized compensation or payment in part, at least, in sheep, corn or provisions, these articles being the currency or legal tender of that country at that time. When real coin money was then to be paid, it was designated in the contract or law, white money, or "*argentum album*," the laws or customs of the country otherwise only requiring a certain small proportion of money to what was tendered in kind. Perhaps in the early colonies in this country a proper interpretation of such language would have permitted payment in tobacco, that being then the currency of the country; but now, and in this country, the same language must have a different interpretation. With us, as a matter of fact, money is the common and only recognized medium of trade, and the supreme *law* of the land forbids the States to make anything else a legal tender in payment of debts, and it must be presumed that individuals contract, and legislators make laws, with reference to this recognized state of things. Our laws and customs, therefore, I think, clearly

show what interpretation should be given to this language of the constitution above quoted.    If the Legislature has the right under our constitution to say that a party may be compensated for his land taken for public use, in "benefits," it may also say that he may be compensated in oxen, sheep, provisions or tobacco, or in any other useful or useless thing. Either they have no power or unlimited power to designate the currency or commodity in which payment may be made. To my mind it seems clear that the constitution properly interpreted gives them no power in the premises.    When the public or a corporation takes the property of an individual, it becomes indebted to him for its value, and should pay that debt in that which by the law of the land would be deemed a lawful tender in payment of any other debt.    Whether any other view would be just and equitable, as suggested in the opinion of the majority of the court, it is not for us to determine.    It is for us only to decide what the law is, not what it should be.

But if we were at liberty to go further, and inquire as to what would be justice and equity in such cases, I think it would not be difficult to show that the public or corporations *ought to be required to pay their debts or discharge their obligations or liabilities as individuals or natural persons are required to pay or discharge theirs.*    So every person should be permitted to say for himself what benefits or improvements he shall pay for, and to make such improvements according to his own views of propriety, and as his circumstances require or permit.    Even if the constitution did not settle this question, the Legislature should not require a person to pay any part of the expense of labor performed by a railroad company for its own benefit, without his knowledge or direction, and without the least reference to his interests.    It is not unfrequently the case that improvements made by one citizen necessarily and directly benefit another, but I have yet to learn that such benefits have in any case been allowed as a set off against a debt due from the former to the latter.  Such

a claim would not be urged by a party or considered by a court for a moment. But in principle it does not differ perhaps essentially from the claim made in this case. On the taking of the land, the railroad company became indebted to Waldron for its value, and now claims the right to off-set, against this debt, benefits conferred on him by improvements subsequently made solely for itself on land practically its own. If this was a suit between private individuals, it may be safely said that no precedent could be found for the allowance of such a claim. But it is said that the compensation secured by the constitution is not for the land taken, but for the injury caused by the taking, &c. Perhaps the best answer to this is in the very language of the constitution: "*Private property* shall not be taken for public use without just compensation." "*In all cases a fair and equitable compensation shall be paid for such land* and the damages arising from the taking of the same." To my mind no language could show more clearly than these constitutional provisions, that the constitution guarantees compensation for the "*property*" or "*land*" taken. There does not seem to me to be any reason to apprehend that this interpretation of the constitution would interfere with the right of a party to recover for incidental damages occasioned by such taking, for I think the argument urged in support of it does not legitimately or logically lead to such consequences, and the constitution in express terms secures the right to recover such damages. See Art. 4, Sec. 10, and Art. 1, Sec. 8.

As to whether the rights of the parties in this case are governed by the constitution of the United States, or by our State constitution, I do not intimate an opinion, as they would clearly be the same under either. The charge of the court below was, I think, correct. See *Sutton's heirs v. City of Louisville,* 5 Dana, 28; *People v. Mayor of Brooklyn,* 6 Barb. 209; *Rice v. Turnpike Co.,* 7 Dana, 81; *Jacob v. Louisville,* 7

Dana, 114; *Ken. & Nash. R. R. Co. v. Dickerson*, 17 B. Min. 178; 2 Kent's Com. 340, Tit. "Eminent Domain," note.

I concur in the opinion of the majority of the court, except on the point above discussed.